GRIFFIN, J.
We find no error in the issue raised on appeal and affirm the defendant’s judgments and sentences for first-degree felony murder, armed burglary of a dwelling and two counts of robbery with a firearm. One of the issues raised below, however, merits discussion in light of the recent opinion of the Supreme Court of Florida in Almeida v. State, 737 So.2d 520 (Fla.1999).
Jermaine O. Lewis [“Appellant”] contended below and on appeal that his confession to participation in the robbery during which Phillip Quarno was killed should be suppressed because his waiver of his Miranda rights was not knowing and voluntary. He relies on evidence adduced at the hearing below that he is at the borderline of mental retardation, possesses the sophistication and verbal skills of a nine-year-old, and is dyslexic. The lower court, after reviewing appellant’s taped confession and hearing the testimony of appellant and the detective who concluded the interview, determined that the confession was knowing and voluntary. There is evidence in the record to support that conclusion.
In support of the involuntariness argument, appellant referenced the following colloquy concerning his Miranda rights:
AGENT BARNETT: Okay, Jermaine. Like I told you before we got started here, I’ve got this preamble here I’m going to read to you and make sure you understand everything. Then we’ll get started; okay?
*996 So I’m going to read it to you verbatim — move your cup over here — it says:
I, Jermaine 0. Lewis, have been advised and had explained to me my Constitutional rights as follows:
Number one, I have the right to remain silent.
Number two, anything I can say can and will be used against me in a court of law.
Number three, I have the right to talk to a lawyer and have him present with me while I’m being questioned.
Number four, if I cannot afford to hire a lawyer, one will be appointed to represent me before any questioning, if I wish one.
Number five, I understand that this interview and interrogation can and will be stopped at any time upon my request.
Now do you understand each of those rights?
THE DEFENDANT: (No audible response.)
AGENT BARNETT: Is that a yes?
THE DEFENDANT: Yeah, yeah.
AGENT BARNETT: Okay. The A Section—
THE DEFENDANT: What you saying? That I can have a lawyer in here to talk with me?
AGENT BARNETT: Uh-huh. Let me explain something to you. What I want to do is, I read this over to you.
THE DEFENDANT: Uh-huh.
AGENT BARNETT: If you have a problem with something, you let me know; okay?
What this says here, it says: “I understand each of these rights that have been explained to me.”
If you understand everything, I just want you to initial that.
THE DEFENDANT: Yeah.
AGENT BARNETT: Okay. And then B: “Knowing these rights, I do or do not wish to talk to you at this time.”
I need you to circle one of those, and then also initial there and sign there.
Now I know you’re concerned about the lawyer, okay?
I understand you’ve already told your mom and dad a little about what’s going on, and your sister a little bit about what’s going on. And we’ve kind of talked to them, so—
THE DEFENDANT: I ain’t concerned about a lawyer. I’m concerned about my life.
AGENT BARNETT: Well, I understand that.
The lower court addressed the appellant’s contention in his motion to suppress that the above constituted an equivocal request for counsel. Citing to Davis v. United States, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) and State v. Owen, 696 So.2d 715 (Fla.), cert. denied, 522 U.S. 1002, 118 S.Ct. 574, 139 L.Ed.2d 413 (1997), the court denied that suppression ground. Recently, however, in Almeida, the high court clarified Davis and Owen, drawing a distinction between the equivocal evocation of a right and the posing of a question concerning those rights. The court held:
[W]e hold that if, at any point during custodial interrogation, a suspect asks a clear question concerning his or her rights, the officer must stop the interview and make a good-faith effort to give a simple and straightforward answer. To do otherwise-i.e., to give an evasive answer, or to skip over the question, or to override or “steamroll” the suspect-is to actively promote the very coercion that Traylor was intended to dispel. A suspect who has been ignored or overridden concerning a right will be reluctant to exercise that right freely. Once the officer properly answers the question, the officer may then resume the interview (provided of course that the defendant in the meantime has not invoked his or her rights). Any statement obtained in violation of this pro *997 scription violates the Florida Constitution and cannot be used by the State. See Traylor, 596 So.2d at 966.
Id. at 525.
Here, the appellant’s question fits within the- “clear question” category covered by the Almeida decision. The transcript leaves open to debate whether the police response to the query was adequate. As the transcript reveals, the detective answered this question with a simple “un huh.” This response does barely meet the letter of the holding in Almeida, if not its spirit. Far better than the cold transcript, however, the videotape of the interview shows that the “uh-huh” did communicate an affirmative response to the defendant. Further, the detective waited several seconds for the defendant to ponder the affirmative answer before moving on, eventually obtaining appellant’s equivocal verbal waiver (“I ain’t concerned about a lawyer ....”) and the unambiguous written waiver.
AFFIRMED.
COBB and GOSHORN, JJ., concur.