954 So.2d 686 (2007)
STATE of Florida, Appellant,
v.
Jayime SOTO, Appellee.
No. 4D06-1338.
District Court of Appeal of Florida, Fourth District.
April 18, 2007.
*687 Bill McCollum, Attorney General, Tallahassee, and Melanie Dale Surber, Assistant Attorney General, West Palm Beach, for appellant.
Carey Haughwout, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellee.
FARMER, J.
The trial court has suppressed a very small part of what amounts to a confession given in an extensive interview preceded by Miranda warnings. The court found that a question by defendant near the end was in fact a request for counsel. We affirm.
Defendant had been arrested, taken to the police station and placed in an interview room. After he was addressed and given Miranda warnings in Spanish, one officer started an interview at 5:10. The officer began her questions in Spanish but he responded to some questions in English and some in Spanish. That officer instructed him that "for court purposes" he should "speak English for the remainder of the interview."[1]
*688 After several minutes of questioning by the first officer, another officer took over. Later in the second officer's questioning, the atmosphere became heated and the officer said that "we're going to let you calm down." A few minutes later, defendant said: "I don't want a problem. I know I'm in problem now. I can need a lawyer for this situation." The officer did not respond to that and continued questioning.
Over the course of the interview preceding the part suppressed, defendant ultimately stated that twice he had sexual relations with the minor under 16 who had become pregnant. Near the end of their questions, the officer told defendant that he "would be out of here in just a minute" and would then be transported to the County jail. At that point defendant asked: "I can't make a phone call or nothing, no?" The officer answered: "Down there after they get you booked." Between the two officers' questioning, the interrogation lasted more than an hour.
The trial judge watched and listened to a DVD video recording of the entire interview. Defendant said there were language problems and that in fact his request was to call a lawyer.[2] At several points the judge interrupted the playing of the recording to clear up translations with an interpreter present. When the recording and other testimony were finished, the court heard extensive argument. In the end the court observed: "he said: `can I make a phone call?' I can't think of any other reasons to make a phone call if you're being interrogated by the police, except to get legal advice." Further explaining his decision to make a partial suppression of the interview, the court said:
"I'm denying the motion to suppress up until the point where the defendant asks for a phone call. I'm granting the motion to suppress from that point on. I believe that's at 6:07 of the clock when you look at the interrogation."
On appeal the state argues that the trial court got it wrong. It contends that defendant's inquiry about a lawyer did not constitute a clear and unambiguous request for a lawyer. And it is true that defendant's eruption was not phrased in the conventional media fashion of "I want a lawyer." The real issue is  given the language difficulties and overall context  was there a clear meaning to defendant's inquiry? The trial judge resolved this plainly factual conundrum by finding it to be a request for a lawyer and that in context it had no other meaning. As there is evidence in the recording supporting the findings of fact, the court's factual resolution is not subject to being changed by us on appeal.
Defendant's words came out in the form of a question ("I can't make a phone call or nothing, no?") but its real meaning was to inquire of the second officer if it was true that he could not call to have a lawyer in the interview. The officer could not have missed this meaning. The officer's response  "Down there after they get you booked."  could not have been in good faith or a common sense understanding of what he had just been asked. It was an obvious piece of gamesmanship, an evasive answer.
It is true as the state argues that in Florida the rule is that the right to counsel under article I, section 9, means that:

*689 "police in Florida need not ask clarifying questions if a defendant who has received proper Miranda warnings makes only an equivocal or ambiguous request to terminate an interrogation after having validly waived . . . Miranda rights." [e.s.]
State v. Owen, 696 So.2d 715, 719 (Fla.), cert. denied, 522 U.S. 1002, 118 S.Ct. 574, 139 L.Ed.2d 413 (1997). Owen adopted part of the rationale in Davis v. United States, 512 U.S. 452, 460-61, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (if a suspect initially waives his or her rights, the suspect thereafter must clearly invoke those rights during the ensuing interview).
On the other hand, in Traylor v. State, 596 So.2d 957 (Fla.1992), the court held as to waivers of the right to counsel:
"Under [article I, section 9, Florida Constitution], if the suspect indicates in any manner that he or she does not want to be interrogated, interrogation must not begin, or, if it has already begun, must immediately stop. If the suspect indicates in any manner that he or she wants the help of a lawyer, interrogation must not begin until a lawyer has been appointed and is present, or, if it has already begun, must immediately stop until a lawyer is present. Once a suspect has requested the help of a lawyer, no state agent can reinitiate interrogation on any offense throughout the period of custody unless the lawyer is present. . . ." [e.s.]
596 So.2d at 966. "A statement obtained in violation of this proscription cannot be used by the State." Almeida v. State, 737 So.2d 520, 525 (Fla.1999). Moreover, as further explained in State v. Glatzmayer, 789 So.2d 297 (Fla.2001), the question on appeal is whether the officer made a "good-faith effort to give a simple, straightforward answer." 737 So.2d at 525 (citing Almeida 737 So.2d at 525).
In these circumstances the trial court's suppression is not contrary to the holdings in Owen and Davis, Traylor and Almeida, and Glatzmayer. The record demonstrates manifest language difficulties starting with the initial waiver of Miranda rights and for parts of the interrogation itself. The first officer's instruction to defendant to answer only in English was not a reasonable accommodation of the defendant's language difficulties. But even more important, when defendant asked his question in manifestly mangled English about a lawyer for the interview, the officer responded evasively. He did not give the only simple, straightforward answer possible under the circumstances: "of course you can have a lawyer now if you want one." See Glatzmayer, 789 So.2d at 305 ("Unlike the situation in Almeida, the officers did not engage in `gamesmanship'; they did not try `to give an evasive answer, or to skip over the question, or to override or `steamroll' the suspect.'"); see also Almeida, 737 So.2d at 525. Under the trial court's resolution of the facts, we hold that the state has not clearly shown error in suppressing the part that occurred after defendant made what should have been understood as an invocation of his right to counsel. See Glatzmayer, 789 So.2d at 301 ("Appellate courts cannot use their review powers in such cases as a mechanism for reevaluating conflicting testimony and exerting covert control over the factual findings. As with all trial court rulings, a suppression ruling comes to the reviewing court clad in a presumption of correctness as to all fact-based issues, and the proper standard of review depends on the nature of the ruling in each case.").
We also note that the state has not even attempted to show how it might have been prejudiced by the suppression of the mere speck of defendant's statements occurring after his inquiry. See § 924.33, Fla. Stat. *690 (2006) ("No judgment shall be reversed unless the appellate court is of the opinion, after an examination of all the appeal papers, that error was committed that injuriously affected the substantial rights of the appellant. It shall not be presumed that error injuriously affected the substantial rights of the appellant."). On the lengthy part of the recording preceding the part suppressed, there are several statements that could reasonably be understood as clear admissions by defendant to engaging in illicit sexual intercourse with the child even after her father told him that she was not 18 but only 15. It would not seem to us that the state has been inconvenienced in any way in presenting a prima facie case. The brief part excised at the end would not seem even to delay its prosecution of the lewd sexual battery charges in the slightest. If there were error in suppressing the tiny part remaining after the request for counsel, it would have to be the most harmless of errors imaginable. See Goodwin v. State, 751 So.2d 537 (Fla.1999), and State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
Affirmed.
GUNTHER and WARNER, JJ., concur.
NOTES
[1] The officer is a native born Colombian and speaks fluent Spanish. Defendant is of Cuban heritage and is unable to read English but claims to be able to understand some spoken English. When the trial judge asked the officer what she meant by saying "for court purposes" the officer responded: "Because it's my experience that it's troublesome. Sometimes when it's in Spanish everything's got to get transcribed and I've run into that problem before."
[2] The state also furnished the trial judge with a written transcript purporting to be a translation of the entire interview. It became apparent to the judge at the hearing that the transcript/translation omitted part of defendant's responses in Spanish.