BENTON, J.
 

 Isaac Wilder appeals his convictions for first-degree murder, attempted second-degree murder with a firearm, and petit theft, on grounds that the trial court erred in denying the motion to suppress evidence of inculpatory statements he made, after he had invoked his right to counsel, when the police reinitiated custodial interrogation. Because this point is well taken, we do not address the other points on appeal. We reverse for a new trial, with directions to grant the motion to suppress.
 

 As Justice Scalia explained in his opinion for the Court earlier this year, the decisions in
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and
 
 Edwards v. Arizona,
 
 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), laid down rules governing custodial interrogation that require reversal in a case like the one before us (the refinement effected by
 
 Maryland v. Shatzer,
 
 — U.S. —, 130 S.Ct. 1213, 1219-20, — L.Ed.2d - (2010) (requiring abstention from further police-initiated interrogation for only 14 days), having no application here).
 

 Miranda
 
 announced that police officers must warn a suspect prior to questioning that he has a right to remain silent, and a right to the presence of an attorney.
 
 Id.,
 
 at 444, 86 S.Ct. 1602. After the warnings are given, if the suspect indicates that he wishes to remain silent, the interrogation must cease.
 
 Id.,
 
 at 473-474, 86 S.Ct. 1602. Similarly, if the suspect states that he wants an attorney, the interrogation must cease until an attorney is present.
 
 Id.,
 
 at 474, 86 S.Ct. 1602....
 

 In
 
 Edwards,
 
 the Court determined that
 
 Zerbsi’s [Johnson v. Zerbst,
 
 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)] traditional standard for waiver was not sufficient to protect a suspect’s right to have counsel present at a subsequent interrogation if he had previously requested counsel; “additional safeguards” were necessary. 451 U.S., at 484, 101 S.Ct. 1880. The Court therefore superimposed a “second layer of prophylaxis,”
 
 McNeil v. Wisconsin,
 
 501 U.S. 171, 176, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991).
 
 Edwards
 
 held:
 

 
 *806
 
 “[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.... [He] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.”
 

 451 U.S., at 484-485, 101 S.Ct. 1880. The rationale of
 
 Edwards
 
 is that once a suspect indicates that “he is not capable of undergoing [custodial] questioning without advice of counsel,” “any subsequent waiver that has come at the authorities’ behest, and not at the suspect’s own instigation, is itself the product of the ‘inherently compelling pressures’ and not the purely voluntary choice of the suspect.”
 
 Arizona v. Roberson,
 
 486 U.S. 675, 681, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988). Under this rule, a voluntary
 
 Miranda
 
 waiver is sufficient at the time of an initial attempted interrogation to protect a suspect’s right to have counsel present, but it is not sufficient at the time of subsequent attempts if the suspect initially requested the presence of counsel.
 

 Shatzer,
 
 130 S.Ct. at 1219-20. In the present case, after Mr. Wilder asked for a lawyer in the course of custodial interrogation, his interrogator stopped the questioning, just as
 
 Miranda
 
 required. But, rather than facilitating — or at least awaiting— an opportunity for him to consult with counsel, the police shortly thereafter reini-tiated interrogation. This produced the statements introduced over objection at trial, in violation of the requirements of
 
 Edwards.
 

 While incarcerated in county jail on other charges, the appellant was interviewed by officers on five different occasions on November 4, 5, and 7, 2005. According to the officers, on November 4, the appellant was interviewed at 6:35 p.m. and 8.T0 p.m. Later the same day, while he was being fingerprinted, the conversation turned to the events surrounding the murder, and the appellant indicated that he did not want to talk to the police without counsel.
 
 [1]
 
 
 *807
 
 Acknowledging that the appellant did not want to “cooperate” by answering questions, Detective Coarsey ended the interview.
 
 [2]
 

 But later on the night of November 4 or in the early hours of November 5, the appellant was brought back to the interview room because his brother Malcom, who was initially charged with the murder in appellant’s stead, wanted to talk to him. Before allowing him to talk to Malcom, an officer read the appellant his
 
 Miranda
 
 rights (although the officer assured him the police did not want to question him and described the reading of rights as “just a formality”). On November 7, 2005, the officers again questioned the appellant, again on their own initiative. By that time they admittedly viewed him as suspect in the murder (but they did not read the appellant his
 
 Miranda
 
 rights at that time). During the interrogation on November 7, Mr. Wilder made the statements which were the subject of his motion to suppress on
 
 Edwards
 
 grounds. The trial court denied the motion without explanation.
 

 The Court has held that “the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination,” defining “custodial interrogation” as “questioning initiated by law enforcement officers after a person has been taken into custody
 
 *808
 
 or otherwise deprived of his freedom of action in any significant way.”
 
 Miranda,
 
 384 U.S. at 444, 86 S.Ct. 1602. The present case is not one in which the defendant invoked the
 
 Miranda
 
 right to counsel prematurely at first appearance in mere anticipation of possible custodial interrogation.
 
 Cf Sapp v. State,
 
 690 So.2d 581, 585 (Fla. 1997) (holding that the Fifth Amendment right to counsel arises only when the defendant is in custody and interrogation is imminent). Here Mr. Wilder was in jail, albeit on different charges. Interrogation had actually begun by the time he invoked the right to counsel,
 
 see ante,
 
 n. 1 — if not even before: earlier conversations were alluded to but not recorded.
 
 See Rhode Island v. Innis,
 
 446 U.S. 291, 801, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (holding “the term ‘interrogation’ under
 
 Miranda
 
 refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect” (footnote omitted)).
 

 Miranda
 
 requires a warning of the “right to the presence of an attorney.” 384 U.S. at 444, 86 S.Ct. 1602. A defendant may waive this right, to be sure, “provided the waiver is made voluntarily, knowingly and intelligently. If, however, he [expressly] indicates in any manner ... that he wishes to consult with an attorney before speaking[
 
 3
 
 ] there can be no questioning.”
 
 Id.
 
 at 444-45, 86 S.Ct. 1602.
 
 See generally Berghuis v. Thompkins,
 
 — U.S. —, 130 S.Ct. 2250, — L.Ed.2d —
 
 (2010); Davis v. United States,
 
 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362
 
 *809
 
 (1994);
 
 Traylor v. State,
 
 596 So.2d 957 (Fla.1992). Even if custodial interrogation has begun, any unambiguous request for an attorney must be honored; in the event of such a request, the questioning must immediately stop until an attorney is present.
 
 Miranda,
 
 384 U.S. at 474, 86 S.Ct. 1602.
 

 Mr. Wilder invoked his right to have counsel present during custodial interrogation when he said, “I would rather not even talk unless I had an attorney present.”
 
 See Davis v. United States,
 
 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (holding that, to invoke the
 
 Miranda
 
 right to counsel, a suspect “must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney”). He unambiguously communicated his desire that questioning without a lawyer cease. That is precisely how Detective Coarsey understood what Mr. Wilder said, which is why the detective ended the interrogation, explaining to the appellant that he was doing so because the appellant had told him he did not want to “cooperate” by answering the questions he was putting to the appellant at the time.
 

 That the appellant was read his
 
 Miranda
 
 rights before he was permitted to speak to his brother, after he had already invoked his right to counsel, did not render his subsequent statements admissible. In
 
 Edtvards,
 
 the Court explained: “[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation
 
 even if he has been advised of his lights.”
 
 451 U.S. at 484, 101 S.Ct. 1880 (emphasis added).
 
 See also Shatzer,
 
 130 S.Ct. at 1219-20 (“[A] voluntary
 
 Miranda
 
 waiver is sufficient at the time of an initial attempted interrogation to protect a suspect’s right to have counsel present, but it is not sufficient at the time of subsequent attempts if the suspect initially requested the presence of counsel.”);
 
 Youngblood v. State,
 
 9 So.3d 717 (Fla. 2d DCA 2009) (holding that where a defendant invoked his
 
 Miranda
 
 right to counsel, but subsequently made uncounseled statements after further police-initiated interrogation, the fact that the statements were made after the officer re-advised the defendant of his
 
 Miranda
 
 rights did not render the waiver of counsel voluntary).
 

 Finally, the prosecution did not show that appellant initiated further contact with the police or otherwise waived his right to counsel, after invoking it.
 
 See generally Edwards,
 
 451 U.S. at 484-85, 101 S.Ct. 1880 (“We further hold that an accused ..., having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.”). There was no evidence that appellant initiated further contact with the police on November 4, 2005, when he was read his
 
 Miranda
 
 rights before being allowed to talk to his brother. Detective Warkentien testified that the appellant did not initiate contact with him prior to the November 7, 2007, interrogation which resulted in the statements at issue.
 

 On this record, the second and third recorded conversations — including the in-culpatory statements that were the focus of the motion to suppress — were inadmissible. The trial court erred in denying the motion to suppress. The State has failed to establish that the erroneous admission of the statements did not contribute to the verdict.
 
 See State v. DiGuilio,
 
 491 So.2d
 
 *810
 
 1129, 1138-39 (Fla.1986). Accordingly, we reverse and remand for a new trial.
 

 WOLF and PADOVANO, JJ., concur.
 

 [1]
 

 . The following exchange took place after the police had finished fingerprinting appellant:
 

 [Appellant]: Could you — (inaudible)—talk for real? Honest?
 

 Detective Coarsey: Yeah.
 

 [Appellant]: (Inaudible) — Listen to me, man. I'm being straight up, man, because I'm straight up guy.
 

 Detective Coarsey: Okay. (Inaudible).
 

 [Appellant]: I’ve been straight up the whole time.
 

 Detective Coarsey: No, you haven’t. What you've been doing is kind of fishing around.
 

 [Appellant]: Because the thing is, man, situations like this I honestly really, really try to stay as far away from them as possible because—
 

 Detective Coarsey: I don't blame you.
 

 [Appellant]: —I’m not — I’m not trying to be caught in no bullshit, man.
 

 Detective Coarsey: I don’t blame you.
 

 [Appellant]: And y’all say — and y’all coming to me — and I know how y’all play these little games and y’all say this type of stuff. First, you say this person said this and this person ain’t said this and this person say this and this person ain’t said this.
 

 Detective Coarsey: I haven't lied to you yet. I haven't lied to you yet.
 

 [Appellant]: The thing is, man, I'm not trying to be caught up in no shit that I ain’t got no damn thing to do with. You know what I’m saying? I told you. My — I was at the party. I left. That was it. I came back—
 

 Detective Coarsey: But when I asked you — started asking you about hooking up with Wink for $20 you—
 

 [Appellant]: Because you — the thing ⅛— I'm the one — you said you investigating a murder or whatever and like you asking me
 
 *807
 
 about all these other things and I’m like what do — all right. What do that got to do with me? You know what I'm saying? If I left I wouldn't have my business—
 

 Detective Coarsey: Isaac. Listen to me.
 

 [Appellant]: I'm listening to you.
 

 Detective Coarsey: I told you I was talking to you as a witness, not a suspect, right?
 

 [Appellant]: Yes.
 

 Detective Coarsey: Which is what I was doing. I didn't advise you of your constitutional rights?
 

 [Appellant]: Yes, sir, you did.
 

 Detective Coarsey: I came to you as a witness.
 

 [Appellant]: You did.
 

 Detective Coarsey: I told you all you have to do is be honest with me.
 

 [Appellant]: (Inaudible.)
 

 Detective Coarsey: You don't know — you don’t know — you don't know my job. You don’t know what I'm investigating. You don’t know what I know and what I don't know.
 

 [Appellant]: That's real.
 

 Detective Coarsey: What I ask you— there’s a reason for every question I ask you. Whether you like it or not, you know, I'm sorry.
 

 [Appellant]: Okay.
 

 Detective Coarsey: But there’s a reason I ask you and I’m not going to tell you why I’m asking my questions. That’s not how this goes.
 

 [Appellant]: Okay. See, I don't feel comfortable — I'm going to be honest. I don’t feel comfortable in this type of environment and I'd rather like — -just from going through it a lot
 
 I would rather not even talk unless I had an attorney present
 
 and — (Inaudible.) — because, because, man, I have got caught up once before behind some shit that I ain't got nothing to do with and then my thing is where I'm from in my neck of the woods people don’t talk to the police, man.
 

 (Emphasis supplied.)
 

 [2]
 

 . Later, after a discussion involving why the appellant's prints were being taken, the following exchange occurred:
 

 Detective Coarsey: All right man. Stand up. Since you said you didn’t want to cooperate we're done. [Appellant]: (Inaudible).
 

 Detective Coarsey: I said since you said you didn't want to cooperate we’re done. [Appellant]: I didn't say I didn’t want to cooperate, man. I'm just saying—
 

 Detective Coarsey: You just don't want to answer questions which means you don't want to cooperate.
 

 [Appellant]: I don't want to get caught for no bullshit.
 

 Detective Coarsey: We’re trying to keep you out but all you’re doing is hurting yourself.
 

 [3]
 

 . Because the appellant invoked his right to counsel without having initially waived (or being informed of) any
 
 Miranda
 
 rights, his invocation is arguably not subject to the more exacting standard that applies to invocation of the right to counsel after a waiver of
 
 Miranda
 
 rights has once occurred.
 
 See Davis v. United States, 512
 
 U.S. 452, 461, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) ("We therefore hold that,
 
 after a knowing and voluntary waiver of the Miranda rights,
 
 law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney.”) (emphasis supplied);
 
 Collins v. State,
 
 4 So.3d 1249, 1250-51 (Fla. 4th DCA 2009) ("Police are not required to stop a custodial interrogation when a suspect, who has waived his
 
 Miranda
 
 rights, makes an equivocal or ambiguous request for counsel. Thus, where the statement made by the suspect is such that 'a reasonable officer in light of the circumstances would have understood only that the suspect
 
 might
 
 be invoking the right to counsel,' police need not terminate questioning and there is no obligation for police to clarify the equivocal or ambiguous request.”) (citation omitted) (quoting
 
 Davis v. United States,
 
 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994));
 
 Serrano v. State,
 
 15 So.3d 629, 635 (Fla. 1st DCA 2009)
 
 rev. denied,
 
 26 So.3d 582 (Fla. 2010),
 
 cert. denied,
 
 — U.S. —, 130 S.Ct. 3391, 177 L.Ed.2d 310 (2010) (explaining that this rule "applies only where the suspect undergoes questioning after validly waiving the right to counsel pursuant to a proper
 
 Miranda
 
 warning at the outset of interrogation”);
 
 Walker v. State,
 
 957 So.2d 560, 574 (Fla.2007) (after waiver of
 
 Miranda
 
 rights, defendant’s statement that "I think I might want to talk to an attorney” was equivocal and thus, insufficient to invoke his right to counsel).
 
 See also Berghuis v. Thompkins,
 
 — U.S. —, 130 S.Ct. 2250, — L.Ed.2d —, n. 7 (2010) (Sotomayor, J., dissenting) ("See,
 
 e.g., United States v. Plugh,
 
 576 F.3d 135, 143 (C.A.2 2009)
 
 (“Davis
 
 only provides guidance ... [when] a defendant makes a claim that he
 
 subsequently
 
 invoked previously waived Fifth Amendment rights”);
 
 United States v. Rodriguez,
 
 518 F.3d 1072, 1074 (C.A.9 2008)
 
 (Davis'
 
 " 'clear statement' " rule "applies only
 
 after
 
 the police have already obtained an unambiguous and unequivocal waiver of
 
 Miranda
 
 rights”);
 
 State v. Tuttle,
 
 2002 SD 94, ¶ 14, 650 N.W.2d 20, 28;
 
 State v. Holloway,
 
 2000 ME 172, ¶ 12, 760 A.2d 223, 228;
 
 State v. Leyva,
 
 951 P.2d 738, 743 (Utah 1997).”). Under any standard, however, the evidence was clear that appellant invoked his right not to be questioned without counsel present, and was understood to have done so.