PER CURIAM.
 

 Appellant seeks review of his conviction for first-degree murder and his life sentence in prison. He raises one issue on appeal: whether the trial court erred in denying his motion to suppress his confes
 
 *53
 
 sion. We conclude that the trial court properly denied the motion to suppress and, therefore, affirm Appellant’s conviction and sentence.
 

 On June 3, 2008, Jason James was reported missing. Jason’s brother, Phillip, went to Appellant’s house to find Jason because he suspected Appellant might be involved in Jason’s disappearance. Phillip saw Jason’s vehicle at Appellant’s house and found Jason’s keys inside the house. There was blood on the front of Jason’s vehicle. Phillip began looking around Appellant’s property and found burnt remains of a body in an outside fire pit. The parties stipulated that the burnt remains were Jason’s. Drag marks were found from the driveway to the burn pile area. The medical examiner found shotgun pellets in Jason’s skull and testified that the skull wound was fresh and had caused Jason’s death. A 20-gauge shotgun was found inside Appellant’s house.
 

 Appellant’s neighbor testified that after he heard two gunshots, Appellant called him and told him that he had just shot two turtles and was going to start a fire. The neighbor also saw another person at Appellant’s property, Bobby Bethune. Bobby testified that he was at Appellant’s house when Jason arrived, that Appellant ran to Jason with a shotgun and shot Jason twice, once in the head, and that Appellant then made Bobby drag Jason’s body to the burn pile and help Appellant burn the body.
 

 The grand jury returned an indictment for first-degree murder. At trial, the defense theory was that the confession to the police was false and that Bobby Bethune committed the murder. The jury ultimately found Appellant guilty as charged. The trial court sentenced Appellant to life in prison with a minimum mandatory of life. On appeal, Appellant contends that his confession was involuntary because the police interview continued despite his unequivocal request for counsel.
 

 The record reflects that Appellant was read and affirmatively waived his
 
 Miranda
 
 rights before he was taken into custody and again before he was interviewed at the police station. Approximately 40 minutes into the interview, before he made any incriminating statements, Appellant made the following statement, which is the focus of Appellant’s argument on appeal: “I mean if I am being held and I’m being charged with something I need to be on the phone calling my lawyer.” Over the course of the next several minutes of the interview, the detective explained to Appellant that she did not know whether to charge him or what to charge him with at that point because she was still in the process of trying to determine what happened. Appellant indicated that he understood, stating “I’m 100 percent with you and I want you to do your job” and “whatever you need to ask me you can ask me.” The following colloquy then took place:
 

 Detective: So we — can keep going?
 

 Appellant: Yeah
 

 Detective: All right. And again you’re — you’re sitting here absolutely open-minded to talk to me without any problem?
 

 Appellant: Yes
 

 Almost 30 minutes after this exchange, Appellant confessed to the crime, explaining in graphic detail how he shot Jason twice with his 20-gauge shotgun (reloading between shots) and then drug Jason’s body to an outside fire pit where he burned the body along with old tires and yard trash. Appellant indicated that Bobby Bethune had nothing to do with the murder.
 

 Prior to trial, Appellant moved to suppress his confession, arguing that he had made an unequivocal request for counsel but the police continued to interrogate
 
 *54
 
 him. After viewing the video of the police interview, the trial court denied the motion. The trial court found that Appellant’s statement that “I mean if I am being held and I’m being charged with something I need to be on the phone calling my lawyer” was not an unequivocal request for counsel that would require termination of questioning. The trial court also found that the detective did ask clarifying questions before continuing the interview and that Appellant again consented to be interviewed after making this statement. We agree with the trial court’s ruling.
 

 A trial court’s ruling on a motion to suppress carries a presumption of correctness.
 
 Connor v. State,
 
 803 So.2d 598, 605 (Fla.2001);
 
 State v. Davis,
 
 971 So.2d 1017, 1018 (Fla. 1st DCA 2008). We give deference to the trial court’s factual findings if they are supported by competent, substantial evidence but we review the trial court’s determination of constitutional rights
 
 de novo. Connor,
 
 803 So.2d at 605. Specifically, we review
 
 de novo
 
 the trial court’s determination as to whether Appellant’s statement constituted an unequivocal assertion of his right to counsel.
 
 Id.
 
 at 606.
 

 The Sixth Amendment right to counsel attaches only at the initiation of adversary criminal proceedings; however, a suspect subject to custodial questioning has the right to consult with an attorney and to have counsel present during the interrogation.
 
 Miranda v. Arizona,
 
 384 U.S. 436, 469-73, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966);
 
 see also Davis v. U.S.,
 
 512 U.S. 452, 456-57, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). The right to counsel established by
 
 Miranda
 
 is a procedural safeguard that is not a right itself protected by the Constitution but is instead a measure to protect the Fifth Amendment right against compulsory self-incrimination.
 
 Davis,
 
 512 U.S. at 457, 114 S.Ct. 2350;
 
 see
 

 also Dickerson v. U.S.,
 
 530 U.S. 428, 442-44, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (explaining that
 
 Miranda
 
 announced a “constitutional rule,” but stopping short of holding that the
 
 Miranda
 
 warnings are required by the Constitution). If a suspect clearly and unequivocally requests counsel at any time during a custodial interview, the interrogation must immediately stop until a lawyer is present or the suspect reinitiates conversation.
 
 Davis,
 
 512 U.S. at 458, 114 S.Ct. 2350;
 
 see also Traylor v. State,
 
 596 So.2d 957, 966 (Fla.1992). However,
 
 Miranda
 
 and its progeny do not require police officers to stop an interrogation when a suspect, who has made a knowing and voluntary waiver of his rights, thereafter makes an equivocal
 

 or ambiguous request for counsel.
 
 Davis,
 
 512 U.S. at 459, 114 S.Ct. 2350;
 
 see also Berghuis v. Thompkins,
 
 — U.S. -, -, 130 S.Ct. 2250, 2259, 176 L.Ed.2d 1098,-(2010). On this point, the Florida Supreme Court explained that “police in Florida need not ask clarifying questions if a defendant who has received proper
 
 Miranda
 
 warnings makes only an equivocal or ambiguous request to terminate an interrogation after having validly waived his or her
 
 Miranda
 
 rights.”
 
 State v. Owen,
 
 696 So.2d 715, 719 (Fla.1997). The suspect must “articulate his desire to cut off questioning with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent.”
 
 Id.
 
 at 718;
 
 accord Davis,
 
 512 U.S. at 459, 114 S.Ct. 2350.
 

 Here, Appellant’s statement that “I mean if I am being held and I’m being charged with something I need to be on the phone calling my lawyer” was not an unequivocal request for counsel. The statement did not clearly indicate that Appellant wanted counsel present at that time or that he would not answer any
 
 *55
 
 further questions without counsel. At most, his statement was a conditional request for counsel because he prefaced the statement with
 
 “if
 
 I’m being held and I’m being charged with something.”
 
 See Walker v. State,
 
 957 So.2d 560, 574 (Fla. 2007) (concluding that defendant’s statement “I think I might want to talk to an attorney” was an equivocal statement and did not require termination of the interrogation);
 
 but cf. Wilder v. State,
 
 40 So.3d 804 (Fla. 1st DCA 2010) (determining that defendant’s statement “I would rather not even talk unless I had an attorney present” clearly invoked his right to counsel and police understood the request and ended the interrogation).
 

 Appellant further argues that even if the statement was not an unequivocal request for counsel, it was a “prefatory question” about his right to counsel that the police were required to answer before proceeding with the interrogation in accordance with
 
 Almeida v. State,
 
 737 So.2d 520 (Fla.1999). We agree with Appellant’s characterization of the statement, but contrary to Appellant’s argument, we conclude that the police complied with the requirements of
 
 Almeida.
 

 Almeida
 
 involved a defendant making an inculpatory statement concerning an unrelated killing in response to police questioning.
 
 Id.
 
 at 522. After the police started recording the interview and the defendant was read his rights, an officer asked the defendant if he wished to speak without an attorney present.
 
 Id.
 
 The defendant responded “Well, what good is an attorney going to do?”
 
 Id.
 
 The police ignored the question and continued their questioning.
 

 The supreme court held that, unlike
 
 Owen,
 
 which involved a statement allegedly invoking a right, the statement in
 
 Al-meida
 
 was a “custodial utterance that was prefatory to — and possibly determinative of — -the invoking of a right.”
 
 Id.
 
 at 523. The court established a three-step analysis to be applied to such statements: first, the court must determine whether the defendant was in fact referring to his right to counsel; second, the court must determine whether the utterance was a clear, bona fide question calling for an answer, rather than a rumination or a rhetorical question; and third, the court must determine whether the officers made a good-faith effort to give a simple and straightforward answer.
 
 Id.
 
 at 523-25.
 
 See also State v. Glatzmayer,
 
 789 So.2d 297, 304 (Fla.2001) (summarizing the “analytical model” in
 
 Al-meida ).
 

 Here, as in
 
 Almeida
 
 and
 
 Glatzmayer,
 
 Appellant was clearly referring to his right to counsel. Although the circumstances of this case are dissimilar to those cases in that Appellant’s statement was made well into the police interview and not in response to the reading of his rights, Appellant clearly indicated a potential desire to speak with a lawyer at some point. The specific reference to counsel distinguishes this case from
 
 Barger v. State,
 
 923 So.2d 597 (Fla. 5th DCA 2006), where the court held that the defendant’s statement that “I want to know what I am being charged with” was not a prefatory question concerning a constitutional right that required a response under
 
 Almeida.
 
 Appellant’s statement is a much more direct reference to the right to counsel than the statement in
 
 State v. Soto,
 
 954 So.2d 686, 688-89 (Fla. 4th DCA 2007) — “I can’t make a phone call or nothing, no?” — which the court found sufficient to trigger the officers’ duty under
 
 Almeida
 
 to provide a simple straightforward answer before continuing the interview.
 

 Turning to the next step in the
 
 Almeida
 
 analysis, the statement at issue was a bona fide question calling for an answer. Although the record of the suppression
 
 *56
 
 hearing does not contain any testimony concerning how the officers perceived Appellant’s statement, the transcript of the interview clearly reflects that the officers interpreted the statement as a question in the manner suggested by Appellant.
 
 See Glatzmayer,
 
 789 So.2d at 304 (concluding that the defendant’s question was a genuine question based, in part, on the fact that the “officers responded to the utterance as if it were a bona fide question calling for an answer”). The detective sought clarification of Appellant’s statement (“you said something when I walked out”), and Appellant later phrased the prefatory portion of the statement as a question (“I asked [the other detective] am I being charged with something?” and “my question is if I’m being charged with murder or something else”). Thus, pursuant to
 
 Almeida,
 
 the police were required to answer Appellant’s “implied question,” as Appellant characterized it in his brief.
 

 Contrary to Appellant’s argument that the police ignored his question, the record reflects that the detective made a good-faith effort to answer the question. The detective clearly explained that she did not know whether to charge Appellant or what to charge him with at that point because she was still investigating, and she also was frank with Appellant that he was “not in a good situation” because a dead body was found on his property. Appellant seemed satisfied with the detective’s response because he expressly agreed to continue the interview. The fact that the detective not only made a goocl-faith effort to answer Appellant’s prefatory question, but that she apparently did so to Appellant’s satisfaction because he agreed to continue the interview satisfies the requirements of
 
 Almeida. See
 
 737 So.2d at 525 (“Once the officer properly answers the [defendant’s prefatory] question, the officer may then resume the interview (provided of course that the defendant in the meantime has not invoked his or her rights”).);
 
 see also Lewis v. State,
 
 747 So.2d 995 (Fla. 5th DCA 1999) (affirming trial court’s denial of motion to suppress where officers not only answered the defendant’s question concerning his rights, but the defendant also thereafter verbally waived his rights and continued with the interview).
 

 The main purpose of
 
 Miranda
 
 and its progeny is to ensure that confessions are not coerced.
 
 See, e.g., New York v. Quarles,
 
 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984);
 
 Ross v. State, 45
 
 So.3d 403 (Fla.2010). Here, the record does not reflect any coercion or “steamrolling.”
 
 See Glatzmayer,
 
 789 So.2d at 305 (noting that the officers gave a simple and reasonable response to defendant’s question about counsel and did not try “to give an evasive answer, or to skip over the question, or to override or ‘steamroll’ the suspect”). The detective was fair and honest in addressing Appellant’s concerns. She did not seek to elicit incriminating statements from Appellant until after she answered his question and he agreed to continue the interview, and she did not badger Appellant into confessing. Indeed, it is clear from the video of the police interview, which the jury also viewed, that Appellant made his confession voluntarily and without any coercion.
 

 For these reasons, the trial court properly denied Appellant’s motion to suppress his confession. Accordingly, we affirm Appellant’s conviction and sentence.
 

 AFFIRMED.
 

 WOLF, ROBERTS and WETHERELL, JJ., concur.