ORFINGER, J.
Curtis Marco Wilson appeals his conviction and sentence for first-degree murder. The sole issue on appeal is whether the trial court erred in admitting into evidence statements he made to police after he invoked *552 his Fifth Amendment right to counsel. We affirm.
Wilson was arrested and taken to the St. Petersburg Police Department where Citrus County detectives, investigating a murder, questioned him. Before questioning him, the detectives read Wilson his Miranda [1] rights. Wilson did not request an attorney or invoke his right to remain silent. Wilson steadfastly denied that he had ever been to Crystal River where the murder occurred or that he knew the other suspects or anything about the murder. When one of the detectives showed Wilson a warrant for his arrest for first-degree murder, Wilson said: "I don't know what to tell you. I need a lawyer, man." The detectives ceased further questioning and Wilson was transported to Citrus County Jail.
Five days later, the same Citrus County detectives went to the Citrus County jail and questioned Wilson again. After he was again read his Miranda rights, Wilson agreed to speak to the detectives, but said that he could not tell them much because he had to speak to his lawyer first. The detectives urged Wilson to tell them what he knew about the murder, informing him of the evidence they had against him and telling him that the other suspects were claiming that Wilson alone had committed the murder. Wilson adamantly denied having any part in the murder and repeatedly told the detectives that his lawyer would figure out why the other suspects were trying to blame him for it. He did, however, admit to being in Crystal River around the time of the murder.
Before trial, Wilson moved to suppress the statements he made during both interrogations, arguing that both interviews were inadmissible because he had invoked his right to counsel during the first interrogation, requiring the detectives to cease questioning him. The trial court denied Wilson's motion, finding that he had never unequivocally requested the assistance of a lawyer at any time during questioning. At the subsequent trial, Wilson was convicted of first-degree murder and sentenced to life in prison without the possibility of parole.
We review a trial court's ruling on a motion to suppress as a mixed question of law and fact. O'Hare v. State, 263 So. 3d 255, 258 (Fla. 5th DCA 2019). We defer to the trial court's findings of fact as long as they are supported by competent, substantial evidence, but we review de novo a trial court's application of law to the facts. Delhall v. State, 95 So. 3d 134, 150 (Fla. 2012). Though when reviewing such a motion we defer to a trial court's findings of fact, this deference does not fully apply when, as here, the findings are based mainly on review of videotapes and transcripts as opposed to live testimony. State v. Carter, 172 So. 3d 538, 539-40 (Fla. 5th DCA 2015) ; see, e.g., Almeida v. State, 737 So. 2d 520, 524 n.9 (Fla. 1999) ("The trial court had no special vantage point in reviewing this tape. Based on our review of the transcript and tape, we conclude that the record evidence is legally insufficient to support the trial court's finding.").
To resolve this appeal, we must answer two questions. First, did Wilson clearly invoke his right to counsel? And second, if he did, was the admission of his statements following his invocation harmful error? We address each question in turn.
"[A] suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning, and ... the police must explain this right to him before questioning begins."
*553 Davis v. United States, 512 U.S. 452, 457, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (citing Miranda, 384 U.S. at 469-73, 86 S.Ct. 1602 ). If the suspect requests an attorney, the police must immediately cease all questioning. Rhodes v. State, 219 So. 3d 251, 252 (Fla. 1st DCA 2017).
The suspect's request for counsel must be clear and unambiguous. Davis, 512 U.S. at 459, 114 S.Ct. 2350. Whether such a request is unambiguous is an objective inquiry designed to determine if "a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Id.; see, e.g., Daniel v. State, 238 So. 3d 1283, 1285-87 (Fla. 5th DCA 2018) (finding that suspect's statement, "Look, can I have a lawyer, man," was unequivocal request for counsel); Rhodes, 219 So. 3d at 252 (finding that suspect's statement, "I need to see a lawyer," was unequivocal request for counsel); Bean v. State, 752 So. 2d 644, 646 (Fla. 5th DCA 2000) (concluding that statement, "I should be able to talk to a lawyer," was unequivocal request for counsel). "But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning." Davis, 512 U.S. at 459, 114 S.Ct. 2350 ; see, e.g., Walker v. State, 957 So. 2d 560, 571, 574 (Fla. 2007) (concluding that suspect's statement, "I think I may need a lawyer," followed by suspect asking police officer if he needed legal counsel was not unambiguous request for counsel); Spivey v. State, 45 So. 3d 51, 54 (Fla. 1st DCA 2010) (finding suspect's statement, "I mean if I am being held and I'm being charged with something I need to be on the phone calling my lawyer," was not unequivocal request for counsel that would require termination of questioning).
Applying that standard here, we conclude that Wilson's statement, "I need a lawyer, man," was an unambiguous request for counsel. Florida courts have repeatedly found similar statements to be an unequivocal invocation of the right to counsel. And, the detectives' own actions also demonstrate that they understood Wilson's statement to be an invocation of his right to counsel because they cut off further questioning and left the interrogation room shortly thereafter. The trial court correctly denied Wilson's suppression motion as to this statement as the detectives stopped the interrogation once Wilson invoked his right to counsel.
We now examine whether the second round of questioning violated Wilson's right to counsel. The second interview took place five days after the first interview, during which time Wilson remained in custody. Wilson argues that once he invoked his right to counsel, the police could not reinitiate questioning without his attorney present.
Wilson's argument correctly states the law. Reinitiation of questioning following a suspect's invocation of the right to counsel when the suspect has remained in pretrial confinement, as was the case here, is inherently coercive and is presumed to violate the suspect's Miranda rights. See, e.g., Minnick v. Mississippi, 498 U.S. 146, 148-53, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990) (holding that police officers violated defendant's Miranda right to counsel when reinterrogating him two days after defendant requested attorney and defendant remained in county jail between both interrogations); Arizona v. Roberson, 486 U.S. 675, 678, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988) (holding that reinterrogation of defendant, who remained in police custody, three days after he requested attorney violated defendant's Miranda right to counsel);
*554 Edwards v. Arizona, 451 U.S. 477, 482, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (holding that when defendant remained in pretrial confinement, police reinterrogation day after defendant requested an attorney violated defendant's Miranda right to counsel). "Once a suspect has requested the help of a lawyer, no state agent can reinitiate interrogation on any offense throughout the period of custody unless the lawyer is present," with a few limited exceptions. Traylor v. State, 596 So. 2d 957, 966 (Fla. 1992). These exceptions allow police to reinitiate questioning following a suspect's invocation of the right to counsel when the suspect initiates the conversation with police, Edwards, 451 U.S. at 484, 101 S.Ct. 1880, or if the suspect experiences a break in custody that allows him "to get reacclimated to his normal life, to consult with friends and counsel, and to shake off any residual coercive effects of his prior custody." Maryland v. Shatzer, 559 U.S. 98, 110, 130 S.Ct. 1213, 175 L.Ed.2d 1045 (2010). Both exceptions rebut the implicit assumption that reinitiated questioning is inherently coercive. See id. at 105, 130 S.Ct. 1213.
Neither exception was present here. Wilson did not initiate the second round of questioning, as the detectives came to the county jail on their own volition to question him. Likewise, Wilson did not experience a break in custody, as he remained in pretrial detention for the entire time between the first and second interrogation. Thus, Wilson, having requested an attorney, should not have been questioned without an attorney present. Minnick, 498 U.S. at 153, 111 S.Ct. 486 (holding that "when counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney").
We conclude the entire second interview should have been excluded and only Wilson's statements made during the first interview, before he invoked his right to counsel, should have been admitted. However, the erroneous admission of a confession is not per se reversible error; instead, a harmless error analysis must be conducted. Mansfield v. State, 758 So. 2d 636, 644 (Fla. 2000). To establish that an error was harmless, the State must "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." State v. DiGuilio, 491 So. 2d 1129, 1135 (Fla. 1986). To determine whether an error was harmless, appellate courts must examine the entire record, view the admissible evidence presented to the jury, and consider how the jury might have been influenced by the improperly admitted evidence. See id. The analysis "is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test," see id. at 1139, but instead, compels us to examine the properly admitted evidence of Wilson's guilt. Daniel, 238 So. 3d at 1289.
Having carefully reviewed the entire record, we conclude that the admission of the statements that Wilson made during his second police interview was harmless. The second statement did not reveal anything incriminating that was not otherwise presented to the jury. Wilson only told the police during the second interview that he went to Crystal River with one of the other suspects on the night of the murder, stayed in a motel there, and that the other suspect dropped him off in St. Petersburg the next day. The State did not need Wilson's statements to prove these events because it produced independent evidence that Wilson had done all these things, including *555 cell tower records and motel security camera footage.
The only harm that Wilson alleges he suffered from the admission of the second interview was that it undermined his credibility with the jury because his statements contradicted what he told police in his first interview-that he had never been to Crystal River. But this concern is insignificant because with or without the introduction of Wilson's second interview, the jury saw the motel surveillance video, cell phone records, and toll plaza photos that directly undermined Wilson's earlier statements that he had never been to Crystal River and did not know the other suspects.
The evidence against Wilson was damning. We conclude beyond a reasonable doubt that the admission of statements Wilson made to police during his second interrogation did not affect the jury's verdict, and thus affirm Wilson's conviction for first-degree murder and his life sentence.
AFFIRMED.
EVANDER, C.J. and HARRIS, J., concur.

Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).