ALTENBERND, Judge.
 

 Tony Youngblood appeals his judgment and sentence of twelve years’ incarceration for trafficking in methamphetamine in case number 06-CF-000484.
 
 [1]
 
 The judgment
 
 *719
 
 and sentence were entered after he pleaded nolo contendere, specifically reserving the right to appeal the denial of his motion to suppress statements he made during a videotaped interrogation conducted by law enforcement.
 
 [2]
 
 Because law enforcement officers did not cease communications with Mr. Youngblood after he invoked his right to counsel, but instead continued on a course designed to convince him to reconsider his invocation of his constitutional right in order to protect his girlfriend, we conclude that his subsequent decision to waive his right to counsel was involuntary. Accordingly, the trial court erred in failing to grant the motion to suppress the statements, and we must reverse Mr. Young-blood’s judgment and sentence for trafficking in methamphetamine.
 

 In August 2006, officers of the De-Soto County Sheriffs Office performed a search of Mr. Youngblood’s home after arresting him on several outstanding warrants. In one bedroom of the home, the officers discovered a quantity of methamphetamine. Several days later, two officers conducted a custodial interrogation of Mr. Youngblood. At the beginning of this interrogation, one officer advised Mr. Youngblood of his
 
 Miranda
 

 [3]
 

 rights. The following exchange then took place:
 

 Q. Having these rights in mind, do you wish to talk to us without your attorney?
 

 A. No.
 

 Q. Okay. All right.... What’s the name of your attorney?
 

 A. Rios.
 

 Q. Who?
 

 A. Rios.
 

 We agree with Mr. Youngblood that this exchange shows his unequivocal invocation of his right to counsel. In response to questioning, Mr. Youngblood clearly expressed his desire to remain silent until his attorney was present.
 

 As the Supreme Court explained in
 
 Miranda,
 
 once “the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.” 384 U.S. at 473-74, 86 S.Ct. 1602. After a suspect invokes his or her
 
 Miranda
 
 rights, police officers are prohibited from engaging in words or actions that the officers “should know are reasonably likely to elicit an incriminating response from the suspect.”
 
 Rhode Island, v. Innis,
 
 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (footnote omitted).
 

 Rather than terminate the interrogation, the officers in this case remained in the interrogation room while waiting for another officer to arrive to transport Mr. Youngblood back to the jail. The officers continued to discuss the case and their desire to speak with Mr. Youngblood. They suggested to Mr. Youngblood that it might help his girlfriend avoid criminal charges if he accepted responsibility for the narcotics found at his house. Although the recording of this poition of the interrogation is rather garbled, one of the two officers in the interrogation room stated:
 

 Q. No. We’re trying to figure out (inaudible) per se trying to figure out your girlfriend’s charges, about (inaudible) Bill told me that that it’s (inaudible) said that she had nothing to do with it. And if that what was the case [sic],
 
 *720
 
 then would (inaudible) to that affect [sic]. But (inaudible).
 

 One of the officers went on to explain:
 

 Q. I’ll be honest with you, Tony, the biggest thing we were going to ask you about today was the (inaudible) found at your house. (Inaudible)— deals?
 

 A. (Inaudible)—
 

 Q. (Inaudible) house, that’s what we’re talking about. That’s what you’re currently being charged with today (inaudible) done to have her if it was used, then if this was yours, then we — then it would actually help her to get the charges (inaudible).
 

 (Inaudible) — convince me that she didn’t have some knowledge — knowledge of the paraphernalia and the meth that was in the living room, (inaudible) bedroom.
 

 It is undisputed that, having suggested to Mr. Youngblood that he could help his girlfriend avoid criminal charges, the officers re-advised Mr. Youngblood of his
 
 Miranda
 
 rights and asked if he was willing to speak with them. At that point, Mr. Youngblood agreed to speak with the officers, who confirmed with Mr. Youngblood that they were changing the
 
 Miranda
 
 form to reflect his waiver of his rights. Mr. Youngblood then took responsibility for the trafficking amount of methamphetamine that was found in a bedroom in the house.
 

 The State contends that, having initially invoked his
 
 Miranda
 
 rights, Mr. Youngblood knowingly and intelligently chose to forego the assistance of counsel and voluntarily confessed to the crime. We disagree. The State is essentially arguing that the conversations with Mr. Youngblood after he initially invoked his right to counsel were not “interrogation” into the crime, but rather a persuasive discussion on the separate subject of whether he was prudent to decline to discuss the matter with these officers without further delay.
 

 Where a confession is obtained after the administration of
 
 Miranda
 
 warnings, the State bears a “heavy burden” to demonstrate that the defendant knowingly and intelligently waived his or her privilege against self-incrimination and the right to counsel.
 
 Colorado v. Connelly,
 
 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986);
 
 Fare v. Michael C.,
 
 442 U.S. 707, 724, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979);
 
 Miranda,
 
 384 U.S. at 475, 86 S.Ct. 1602;
 
 W.M. v. State,
 
 585 So.2d 979, 981 (Fla. 4th DCA 1991). Only if the “totality of the circumstances surrounding the interrogation” reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the
 
 Miranda
 
 rights have been waived.
 
 Moran v. Burbine,
 
 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) (quoting
 
 Fare,
 
 442 U.S. at 725, 99 S.Ct. 2560). Thus, “any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege.”
 
 Miranda,
 
 384 U.S. at 476, 86 S.Ct. 1602. The issue of voluntariness is ultimately a legal, rather than a factual, question.
 
 See Ramirez v. State,
 
 739 So.2d 568 (Fla.1999).
 

 Here, Mr. Youngblood agreed to speak with law enforcement only after the officers suggested that he might help them “figure out [his] girlfriend’s charges” by taking responsibility for a quantity of methamphetamine found in his house.
 
 [4]
 
 
 *721
 
 The officers’ statements suggested to Mr. Youngblood that his girlfriend could be charged if he did not take responsibility for the narcotics. We recognize that similar tactics, if undertaken after a suspect has voluntarily waived his or her
 
 Miranda
 
 rights, may sometimes be insufficient to render a suspect’s confession inadmissible.
 
 See, e.g., State v. Walter,
 
 970 So.2d 848, 851-52 (Fla. 2d DCA 2007). In this case, however, Mr. Youngblood had invoked his
 
 Miranda
 
 rights, and the statements of the law enforcement officers amounted to continued interrogation. Mr. Youngblood did not voluntarily reinitiate contact with law enforcement, but rather was effectively pressured into waiving his constitutional rights. We conclude that Mr. Young-blood’s waiver of his
 
 Miranda
 
 rights under these circumstances was not voluntary.
 

 Because Mr. Youngblood invoked his
 
 Miranda
 
 rights and did not thereafter voluntarily waive those rights, the trial court' should have suppressed the challenged statements. Accordingly, we reverse the conviction and sentence for trafficking in methamphetamine.
 

 Affirmed in part, reversed in part, and remanded.
 

 CASANUEVA and SILBERMAN, JJ„ Concur.
 

 [1]
 

 . Mr. Youngblood’s negotiated plea involved charges filed in five other informations, as well as two additional counts in case number 06-CF-000484. This opinion does not affect
 
 *719
 
 any of the judgments or sentences imposed on the other charges.
 

 [2]
 

 .
 
 See
 
 Fla. R.App. P. 9.140(b)(2)(A)(i) (allowing a defendant who enters a guilty or no contest plea to "expressly reserve the right to appeal a prior dispositive order of the lower tribunal, identifying with particularity the point of law being reserved”).
 

 [3]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 

 [4]
 

 . The State has not contested the content of the recorded statement. Given that Mr. Youngblood’s request for an attorney is unequivocal on the record, the poor quality of
 
 *721
 
 the tape makes the State’s argument more difficult because the State has the burden of demonstrating a knowing and voluntary waiver of counsel.