POLEN, J.
 

 Appellant, Roderick B. Woods, appeals the trial court’s denial of his motion to suppress evidence and order adjudicating him guilty of possession of a firearm by a
 
 *670
 
 convicted felon, possession of ecstasy, possession of cocaine, and possession of less than twenty grams of marijuana. We affirm.
 

 Woods was arrested after police officers responding to an anonymous tip regarding a homicide in Woods’ apartment building found drugs and a firearm inside Woods’ bedroom. After receiving the tip, three officers went to Woods’ apartment. An officer knocked on the apartment door, and a woman answered. An officer asked the woman if others were in the apartment, and the woman said there were. When the other individuals appeared at the door, the officers informed them that they were investigating a homicide and asked the individuals to step outside to talk. The individuals complied without resistance. At no point did any of the officers draw a gun, taser, or other weapon, nor was their request made in a loud or intimidating fashion.
 

 Woods exited the apartment with no shirt on and subsequently asked if he could go inside and get a shirt. Officer Nubin replied that he could, but that she would have to accompany him for officer safety reasons. Officer Harris asked, “Are you sure it’s all right if we follow you back to your room?” and Woods replied, “Yes.” Harris and Nubin followed Woods to his room and saw in plain sight a bag of marijuana and a bag of what appeared to be crack cocaine. Upon executing a search warrant, marijuana, cocaine, and firearms were recovered. Up until the point when the officers saw marijuana in his room, Woods was free to leave.
 

 The trial court found the encounter was consensual and denied Woods’ motion to suppress. Thereafter, Woods pled no contest to the charges and the trial court sentenced him to ninety days imprisonment with credit for seventy-three days served. Woods now timely appeals.
 

 Woods argues the trial court erred in denying his motion to suppress because the encounter was not consensual. Specifically, Woods contends that when the officers asked the individuals to step outside the apartment, the encounter evolved into an investigative stop. The State replies that there was no error because the officers’ account was credible and showed the encounter was consensual.
 
 [1]
 

 In reviewing a trial court’s determination as to a motion to suppress, this court must defer to the trial court’s factual findings and review any legal conclusions
 
 de novo. Backus v. State,
 
 864 So.2d 1158, 1159 (Fla. 4th DCA 2003). In
 
 Popple v. State,
 
 626 So.2d 185 (Fla.1993), the Florida Supreme Court described the different levels of police stops:
 

 There are essentially three levels of police-citizen encounters. The first level is considered a consensual encounter and involves only minimal police contact. During a consensual encounter a citizen may either voluntarily comply with a police officer’s requests or choose to ignore them. Because the citizen is free to leave during a consensual encounter, constitutional safeguards are not invoked.
 

 The second level of police-citizen encounters involves an investigatory stop as enunciated in
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). At this level, a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime. In order
 
 *671
 
 not to violate a citizen’s Fourth Amendment rights, an investigatory stop requires a well-founded, articulable suspicion of criminal activity. Mere suspicion is not enough to support a stop.
 

 ... [T]he third level of police-citizen encounters involves an arrest which must be supported by probable cause that a crime has been or is being committed.
 

 Id.
 
 at 186 (internal citations omitted).
 

 Woods likens the present case to cases in which the court has held that an officer’s use of authority to get an individual to remove his hand from his pocket or to exit a vehicle transformed an ordinary stop into a temporary detention and thus amounted to an illegal seizure. Woods relies heavily on
 
 Popple
 
 in which a police officer approached a legally parked car in a desolate area and asked the occupant to exit the vehicle.
 
 Id.
 
 at 186. When the occupant opened the door, the police officer saw a cocaine pipe on the floorboard in plain view.
 
 Id.
 
 The occupant was arrested and charged with possession of cocaine and possession of drug paraphernalia.
 
 Id.
 
 The Florida Supreme Court held:
 

 Whether characterized as a request or an order, we conclude that Deputy Wil-moth’s direction for Popple to exit his vehicle constituted a show of authority which restrained Popple’s freedom of movement because a reasonable person under the circumstances would believe that he should comply.
 

 Therefore we hold that for Fourth Amendment purposes Popple did not consent to exiting his vehicle, but rather was seized by virtue of submitting to Deputy Wilmoth’s show of authority. Because Deputy Wilmoth did not have the reasonable suspicion necessary to authorize an investigatory stop, the initial detention was illegal and the resulting acquisition of the cocaine and drug paraphernalia was the fruit of an unconstitutional seizure.
 

 Id.
 
 at 188 (footnote and internal citation omitted).
 

 Popple
 
 is not dispositive of the present case. First,
 
 Popple
 
 is factually distinguishable. In
 
 Popple,
 
 an officer asked the driver of a legally parked vehicle to step outside his vehicle because the driver was acting nervously. Here, the officers responded to an apartment after receiving a tip in a homicide investigation, the individuals inside the apartment willingly exited to speak with the officer, and the officers ultimately gained Woods’ permission to enter the apartment. Second,
 
 Popple
 
 does not negate the “totality of the circumstances” approach adopted by the United States Supreme Court in
 
 United States v. Mendenhall,
 
 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), where the Court held:
 

 [A] person has been “seized” within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or.tone of voice indicating that compliance with the officer’s request might be compelled.
 

 Id.
 
 at 554, 100 S.Ct. 1870.
 

 State v. Triana,
 
 979 So.2d 1039 (Fla. 3d DCA 2008), is not only factually similar to the instant case but properly considers the factors considered in
 
 Mendenhall.
 
 In
 
 Triana,
 
 four officers approached the gate of Triana’s two-acre estate at 9 p.m. after receiving information from a confidential source that there was marijuana growing
 
 *672
 
 at the residence.
 
 Id.
 
 at 1041. Triana ultimately gave his consent for the officers to search the property and allowed the officers in his home.
 
 Id.
 
 Once inside the home, the officers noticed a second building and received Triana’s written consent to their search of that structure. The officers recovered 103 pounds of marijuana.
 
 Id.
 
 at 1042.
 

 Triana moved to suppress the evidence arguing that the encounter was an illegal seizure. The Third District reversed the trial court’s suppression of the evidence.
 
 Id.
 
 at 1042-45. First, the court explained that no level of suspicion was required before the officers arrived at the gate and questioned Triana.
 
 Id.
 
 at 1043. Such practice is commonly referred to as a “knock and talk” and is “a legitimate investigative procedure so long as the encounter does not evolve into a constructive entry.... As such, a knock on the door and subsequent discussion is a purely consensual encounter, which officers may initiate without any objective level of suspicion.”
 
 Id.
 
 (citations omitted). The court noted that the fact that the initial questioning occurred outside of the residence supported a conclusion that Triana was not in custody because even an interview inside one’s home is not ordinarily considered a custodial interrogation.
 
 Id.
 
 Finally, the consensual encounter between Triana and the officers never became a “constructive entry” because the officers did not employ overbearing tactics, such as drawing weapons, threatening Triana, or raising them voices, that would have coerced Triana out of his home.
 
 Id.
 
 at 1044.
 

 Like the Third District in
 
 Triana,
 
 we have considered the
 
 Mendenhall
 
 factors and find no Fourth Amendment violation in the present case. The officers never acted in a threatening manner, never drew their weapons, and never raised then-voices or ordered the residents to do anything against their will. Accordingly, we affirm.
 

 Affirmed.
 

 MAY and GERBER, JJ., concur.
 

 [1]
 

 . While the testimony of the witnesses varied greatly as to what occurred after the officers knocked on the apartment door, we must accept that version offered by the officers, whom the trial court found to be more credible.