COX, JACK S., Associate Judge.
 

 Richard Noto appeals his conviction for trafficking in cocaine, contending that the trial court erred in failing to suppress some of his own statements and in failing to suppress the seized cocaine. Noto also challenges the trial court’s denial of his motion for judgment of acquittal. The State cross appeals, arguing that the trial court erred in suppressing an admission, made by Noto, to the possession of cocaine. We find no merit in the claims raised and affirm Noto’s conviction.
 

 In June of 2004, it was reported to the Sunrise Police Department that drugs were being purchased from a residence in Sunrise, Florida. In November of 2004, Detective Hodgers and another detective conducted surveillance on the residence when a silver Nissan, driven by a Ms. Perez, drove into the driveway. The detectives observed Ms. Perez exit her vehicle and enter the residence for fifteen minutes. Upon leaving the residence, Ms. Perez returned back to her vehicle and drove away. The detectives then followed Ms. Perez who drove to a restaurant’s parking lot. Instead of parking her vehicle in an open space close to the restaurant, Ms. Perez parked her vehicle next to a black Cadillac occupied by Noto. Ms. Perez exited her vehicle and entered Noto’s vehicle through the passenger side. For thirty seconds, Ms. Perez was inside Noto’s vehicle. Ms. Perez then exited Noto’s vehicle and got back into her own vehicle. Both vehicles then drove away.
 

 Detective Hodgers proceeded to follow Noto. After Noto’s vehicle failed to come to a complete stop at a red light, Detective Hodgers pulled over Noto and asked for his driver’s license and registration. Noto furnished his driver’s license and registration and asked why he was pulled over. Instead of responding to Noto’s question, Detective Hodgers said that he would be right back and took the driver’s license and registration back to his vehicle. Detective Hodgers returned and explained to Noto that he is a narcotics investigator and what he observed earlier at the restaurant parking lot was consistent with a drug transaction. Detective Hodgers asked if Noto had anything illegal. Noto said no, but then stated that tomorrow was his birthday and he wanted to “get a little something.” Detective Hodgers asked what he had meant, resulting in Noto’s admission that he picked up a gram of cocaine from Ms. Perez, but had since swallowed the cocaine. Detective Hodgers informed him that his stomach would be pumped and that he was going to call for a
 
 *817
 
 canine. Ten to fifteen minutes later, a canine was brought to the traffic stop and alerted to the presence of drugs from the exterior of the vehicle. A subsequent search of the vehicle’s interior revealed more than thirty grams of cocaine in the backside of the passenger seat; Noto was transported to the police station.
 

 It was at the police station where he was first advised of his Miranda
 
 [1]
 
 rights. Noto demanded an attorney, and was subsequently placed in a holding cell. While in the holding cell, Noto, from six feet away, overheard “trafficking” mentioned between Detective Hodgers and the other officers. Noto interjected and asked what “trafficking” meant. After Detective Hodgers stated that it meant cocaine greater than one ounce, Noto said he was supposed to be picking up only an “8-ball” and two grams. Later, in a recorded interview room occupied by only Noto and Ms. Perez, Noto reiterated — this time to Ms. Perez — that he was supposed to pick up an “8-ball” and two grams.
 

 MOTION TO SUPPRESS
 

 The trial court suppressed the incriminating statements Noto made at the traffic stop, but not the cocaine found in Noto’s vehicle. In reviewing a trial court’s determination as to a motion to suppress, this court must defer to the trial court’s factual findings and review any legal conclusions
 
 de novo. Woods v. State,
 
 25 So.3d 669, 670 (Fla. 4th DCA),
 
 review denied,
 
 No. SC 10-527, 2010 WL 2546673 (Fla. June 23, 2010).
 

 Noto first contends that the initial traffic stop executed by Detective Hodgers was unlawful because it was a pretext for a narcotics investigation. This assertion must be denied, however, because “[sjubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.”
 
 Whren v. United States,
 
 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). The trial court found that Detective Hodgers observed Noto rolling through a red light, a violation of Florida’s traffic law.
 
 See
 
 § 316.075(l)(c), Fla. Stat. (2004). Consequently, Detective Hodgers had probable cause to pull over Noto’s vehicle. Accordingly, the stop was lawful.
 
 See Holland v. State,
 
 696 So.2d 757, 759 (Fla.1997) (finding sufficient probable cause for pulling over a vehicle for failing to stop at a stop sign).
 

 This, then, brings us to the statements Noto made to police during the stop. The State argues, in its cross appeal, that the trial court erred in suppressing Noto’s admission during the traffic stop concerning his possession of a gram of cocaine. The trial court found the exchange between Detective Hodgers and Noto conversational and casual. Nonetheless, the trial court found that Noto’s admission was a product of custodial interrogation and suppressed the admission since
 
 Miranda
 
 warnings were not given.
 

 “Miranda
 
 warnings are required only when an individual is undergoing custodial interrogation.”
 
 Hunter v. State,
 
 8 So.3d 1052, 1063 (Fla.2008),
 
 cert. denied,
 
 - U.S. -, 129 S.Ct. 2005, 173 L.Ed.2d 1101 (2009). For purposes of
 
 Miranda,
 
 “[a] person is in custody if a reasonable person placed in the same position would believe that his or her freedom of action was curtailed to a degree associated with actual arrest.”
 
 Ramirez v. State,
 
 739 So.2d 568, 573 (Fla.1999). Whether a person is in custody depends upon a consideration of the totality of the circumstances, including:
 

 (1) the manner in which the police summon the suspect for questioning; (2) the
 
 *818
 
 purpose, place, and manner of the interrogation; (3) the extent to which the suspect is confronted with evidence of his or her guilt; and (4) whether the suspect is informed that he or she is free to leave the place of questioning.
 

 Schoenwetter v. State,
 
 931 So.2d 857, 866-67 (Fla.2006) (citing
 
 Ramirez,
 
 739 So.2d at 574). Confronting Noto with evidence of guilt by accusing him of being involved in a drug transaction is a factor that “weighs heavily in the balances.”
 
 State v. Pitts,
 
 936 So.2d 1111, 1127 (Fla. 2d DCA 2006). Moreover, at the time Noto made his admission, Detective Hodgers was in possession of Noto’s driver’s license and registration. We conclude that a reasonable person placed in the same position as Noto would believe his or her freedom of action was curtailed to a degree associated with actual arrest. Thus, the trial court did not err in suppressing Noto’s unwarned admission during the traffic stop since it was a product of custodial interrogation.
 

 Noto argues that the violation of
 
 Miranda
 
 during the traffic stop supports the suppression of the discovery of the cocaine in the vehicle, and we are requested to compare this Court’s decision in
 
 Kessler v. State,
 
 991 So.2d 1015 (Fla. 4th DCA 2008). In
 
 Kessler,
 
 the defendant was convicted of trafficking in cocaine and conspiracy to traffic in cocaine.
 
 Id.
 
 at 1017. According to the defendant, while in custody, the police requested that he reveal, and place a phone call to, his drug source when he had not been fully advised of his
 
 Miranda
 
 rights.
 
 Id.
 
 A recorded phone conversation took place and the trial court refused to exclude the evidence of the tape recording.
 
 Id.
 
 at 1020. We concluded that the trial court erred in doing so because the taped phone call occurred during custodial interrogation after the defendant was given inadequate
 
 Miranda
 
 warnings.
 
 Id.
 
 at 1021-22. As to the scope of the remedy for the
 
 Miranda
 
 violation, we noted that the plurality and concurrence in
 
 United States v. Patane,
 
 542 U.S. 630, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004), “held that the ‘fruit of the poisonous tree’ doctrine does not extend to
 
 physical evidence
 
 derived from unwarned but voluntary statements.”
 
 Kessler,
 
 991 So.2d at 1020 (“According to
 
 Patane,
 
 the failure to give complete
 
 Miranda
 
 warnings does not require suppression of physical or non-testimonial evidence derived from the violation.”). Here, unlike
 
 Kes-sler,
 
 but like
 
 Patane,
 
 Noto sought to suppress the physical evidence of cocaine, which was derived from an unwarned but voluntary statement by Noto during a lawful traffic stop. According to
 
 Patane,
 
 the suppression of the cocaine by the trial court was not required.
 

 Noto next contends that the trial court erred in failing to suppress the cocaine because Detective Hodgers’ continued detention of Noto at the traffic stop was unlawful. “ ‘If a driver is stopped for the commission of a traffic infraction, he or she may be subjected to a canine search of the exterior of the vehicle so long as it is done within the time required to issue a citation.’ ”
 
 Nulph v. State,
 
 838 So.2d 1244, 1245 (Fla. 2d DCA 2003) (quoting
 
 Eldridge v. State,
 
 817 So.2d 884, 887 (Fla. 5th DCA 2002)). Here, it took an additional fifteen to twenty minutes for the canine to arrive on the scene after Noto admitted he picked up a gram of cocaine. Accordingly, we find that the traffic stop extended beyond the time necessary to write a citation. In order to justify the continued detention, Detective Hodgers must have had “a reasonable suspicion based on articulable facts that criminal activity is occurring.”
 
 Summerall v. State,
 
 777 So.2d 1060, 1061 (Fla. 2d DCA 2001). The State argues, and the Court agrees, that Detective
 
 *819
 
 Hodgers had sufficient reasonable articula-ble suspicion of criminal activity occurring — based on the information of drugs being purchased from the Sunrise, Florida residence, observing the encounter between Noto and Ms. Perez, and Noto’s admission of picking up a gram of cocaine — -which justified the continued detention. Accordingly, the trial court did not err in failing to suppress the cocaine.
 

 We note and distinguish the recent Fifth District Court of Appeal decision in
 
 Whitfield v. State,
 
 33 So.3d 787 (Fla. 5th DCA 2010). In
 
 Whitfield,
 
 the defendant was pulled over for speeding.
 
 Id.
 
 at 788. Nearly twenty-nine minutes later, a canine was brought to the traffic stop and began a sniff search of the vehicle. The canine alerted to the vehicle, and a subsequent search revealed over twenty-eight grams of cocaine. The defendant moved to suppress the cocaine, arguing that the evidence was derived from an unreasonably prolonged traffic stop. The trial court found the delay not unreasonable and did not suppress the cocaine.
 
 Id.
 
 at 790. The Fifth District Court of Appeal, however, did “not see how the length of this stop could be justified by the circumstances” despite the State’s attempt to establish reasonable suspicion of criminal activity based on the following: “1) the rental vehicle Whitfield was driving was not rented to him; 2) the rental contract did not contain Whitfield’s name; 3) Whitfield was unduly nervous; 4) Whitfield did not fully disclose his prior criminal record; and 5) Whitfield’s story about his business was not credible.”
 
 Id.
 
 at 791, 795. Distinguishing the instant case from
 
 Whitfield,
 
 Noto admitted to the officer, while Whitfield did not, that he had picked up cocaine.
 

 When Noto invoked his
 
 Miranda
 
 rights at the police station, the officers were “prohibited from engaging in words or actions that the officers ‘should know [were] reasonably likely to elicit an incriminating response from the suspect.’ ”
 
 Youngblood v. State,
 
 9 So.3d 717, 719 (Fla. 2d DCA 2009) (quoting
 
 Rhode Island v. Innis,
 
 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)). Noto alleges that the officers engaged in such words or actions by mentioning “trafficking” while Noto was in a holding cell six feet away. Overhearing “trafficking” caused Noto to ask what the word meant. It was then explained to Noto that it meant cocaine greater than one ounce, which prompted Noto to state that he was supposed to be picking up only an “8-ball” and two grams. Noto contends that the trial court erred in failing to suppress his statements since he had invoked his
 
 Miranda
 
 rights prior to making this statement. We find that the trial court did not err because the officers should not have known that the conversation between them was reasonably likely to elicit an incriminating response from Noto. To the contrary, Noto spontaneously interjected himself into the officers’ conversation.
 

 Noto argues that placing only Noto and Ms. Perez together in the same interview room was a means to circumvent the invocation of Noto’s
 
 Miranda
 
 rights. The recorded conversation established that Noto told Ms. Perez that he asked for only an “8-ball” and two grams — the same assertion made earlier to the officers. The recorded statement was properly admitted into evidence since it was not the product of custodial interrogation as Ms. Perez was neither a state agent nor acting at the direction of any state agent.
 
 See Innis,
 
 446 U.S. at 301, 100 S.Ct. 1682 (defining “interrogation” as express questioning or “any words or actions on the part of the
 
 police
 
 ... that the police should know are reasonably likely to elicit an incriminating response” (emphasis added)).
 

 
 *820
 
 Accordingly, the trial court did not err in its Order on Motion to Suppress.
 

 MOTION FOR JUDGMENT OF ACQUITTAL
 

 Finally, Noto challenges the trial court’s denial of his motion for judgment of acquittal. We find no error in the trial court’s ruling and affirm as to this issue. In so doing, we note that in
 
 Way v. State,
 
 475 So.2d 239, 241 (Fla.1985), our supreme court held that the State is not required to prove that the defendant had knowledge of the weight of the cocaine possessed.
 

 Affirmed.
 

 CIKLIN and GERBER, JJ., concur.
 

 [1]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).