PER CURIAM.
Kenneth James O’Brien (“Appellant”) appeals his convictions for sexual battery on a child less than 12 years old. He argues the trial court erred in admitting into evidence his confession, his laptop computer and testimony about child pornography saved on the laptop. We sustain without further discussion the trial court’s rulings as to the laptop and its contents. But we agree the lower court should have suppressed the confession. Because we cannot beyond a reasonable doubt say the error was harmless, we reverse Appellant’s convictions.
*886 Alachua County Sheriffs deputies arrested Appellant the night of September 14, 2008, at the victim’s home. One of the arresting deputies started to elicit information from Appellant about what occurred. When Appellant began explaining that he and the victim had been “just messing around” the deputy advised him of his Miranda[1] rights. Appellant unequivocally indicated his desire to have an attorney present during questioning, and the deputy ceased the interrogation and placed Appellant, handcuffed, in the patrol car. Thereafter, discourse between Appellant and deputies concerned the tightness of the handcuffs, Appellant’s hiccups, and his requests for cigarettes, water and air conditioning.
After roughly 40 minutes, another officer, Sergeant Crews, approached Appellant, who was still sitting in the cruiser, and initiated the following conversation:[2]
... Sergeant with the Sheriffs Office. How you doing, Sergeant.
—would you stand up for a minute? These things are killing me.
You want to stand up? How about you just swing your legs—
Yeah, that’s fíne. That’s fíne. I just— Ah. My legs — I never been in the back of a squad car in my life.
Never been arrested?
No, sir. Never ever.
[[Image here]]
Do you have an attorney?
No, sir.
No?
No, sir.
Tell you what I — okay—do you have — I need information — involving the crime—
And you told the deputy that you think you need to have an attorney present?
Yes, sir.
Are you willing to contact an attorney tonight and have them present, or do you want to reconsider it and — maybe a detective—
Nah, I’m not sure. I — I don’t want to stick my foot in my mouth. You know what I’m saying? But — actually, they’re real good friends of mine—
So would you be willing to go to the station and talk to—
I’m going to the station, anyway, so it doesn’t make any difference, does it, jail or the station.
We’d appreciate it.
Oh, I know you do.
The long and short of it — You did what you did.
Exactly, exactly.
It’s done — it’s history. So whatever you did is what you did.
Right.
Now, your cooperation is — but an 11-year-old is going to be interviewed by— he’s going to be interviewed by some specialist.
Yes, sir.
In this type of crime. And go forward with the evidence — What happened is going to come out one way or the other. I’d rather just get it over and, you know, try and keep it as simple as possible. I don’t want him to go through all kind of crap.
So you would be willing to—
I don’t want him to be in harm’s way so — I don’t want to go through all kinds of crap.
*887 I understand.
Whatever I say — like you say, it’s going to come out, anyway, so it don’t matter. And I don’t want to hurt him, you know, as much as possible.
The sergeant apparently left Appellant at that point. Appellant continued talking to the other deputies on scene but made no incriminating statements, and no one posed questions to Appellant, directly or indirectly, about the incident leading to his arrest.
Approximately two hours after arresting Appellant, deputies transported him to the Sheriffs Office. There a detective advised him, again, of his Miranda rights. The detective then asked Appellant, “Do you understand each of these rights that I explained to you?” Appellant answered, ‘Tes, sir.” Seeking to ensure Appellant’s apparent waiver of the right to an attorney was voluntary, the detective asked a series of questions ending with “So you did this of your own free will?” Appellant answered, ‘Tes, sir.” And the interrogation proceeded.
Appellant went on to admit performing oral sex on the child victim, touching the victim underneath his pants while the two were in the victim’s swimming pool, and showing the victim adult pornography on the Internet. He denied the victim performed oral sex on him. He also said he threw his laptop computer into the wooded area behind the house after the victim’s parents called police.
Appellant moved to suppress his statements asserting that he invoked his right to counsel but made the incriminating statements after law enforcement unlawfully reinitiated questioning.[3] The trial court denied Appellant’s motion, finding (as pertinent to Appellant’s argument on appeal) that
although it is evident that [Appellant] initially invoked his right to counsel ... he did make a later voluntary decision, after the second reading of Miranda, to waive his right to have counsel present .... Law enforcement did speak with him after the first invocation of his right to counsel, although I don’t find that it rose to the level of interrogation.
When reviewing a court’s ruling on a motion to suppress, we presume the court’s findings as to historical facts correct, but we review de novo the court’s application of the facts to a constitutional standard. See Cuervo v. State, 967 So.2d 155, 160 (Fla.2007); Brye v. State, 927 So.2d 78, 80-81 (Fla. 1st DCA 2006). The standards applicable here are the following. Waiver of one’s Miranda rights must be made voluntarily, knowingly and intelligently. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). “[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.” Edwards v. Arizona, 451 U.S. 477, 484, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The accused who invokes his right to counsel “is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.” Id. at 484-85, 101 S.Ct. 1880. Under Edwards, “once an in *888 dividual has invoked the Miranda right to counsel, a valid waiver of this right can be found only if the individual is the one responsible for reinitiating contact with the police,” Sapp v. State, 690 So.2d 581, 584 (Fla.1997) (emphasis added). And see Maryland v. Shatzer, — U.S. -,-, 130 S.Ct. 1213, 1219-20, 175 L.Ed.2d 1045 (2010) (explaining that the Edwards rule means “a voluntary Miranda waiver is sufficient at the time of an initial attempted interrogation to protect a suspect’s right to have counsel present, but is not sufficient at the time of subsequent attempts if the suspect initially requested the presence of counsel”). But “if the accused initiates further conversation, is reminded of his rights, and knowingly and voluntarily waives those rights, any incriminating statements made during this conversation may be properly admitted.” Welch v. State, 992 So.2d 206, 214 (Fla.2008) (citing Oregon v. Bradshaw, 462 U.S. 1039, 1045-46, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983)).
Based on these standards we conclude the trial court’s determination that Appellant voluntarily and validly waived his right to have counsel present during questioning is incorrect. Edwards lays down what our supreme court reads as a bright line rule: once an accused makes clear he wants an attorney present during custodial interrogation — the State does not dispute Appellant’s invocation was unequivocal — waiver of that right does not occur unless the accused reinitiates the dialogue. The state contends Appellant opened the door, unprovoked, to further discussion about the incident leading to his arrest. That is not the case. Rather, during the conversation between Appellant and Sergeant Crews that occurred after Appellant asserted the right to counsel, the sergeant invited Appellant to reconsider waiting for counsel and instead talk to the detective at the station. The question, then, is whether that invitation rendered involuntary Appellant’s relinquishment of his right to counsel.
In Youngblood v. State, 9 So.3d 717 (Fla. 2d DCA 2009), the court found such a waiver involuntary where law enforcement officers made statements designed to persuade the accused to reconsider his invocation of the right. After arresting Young-blood on several outstanding warrants and finding methamphetamine in his apartment, DeSoto County Sheriffs deputies conducted a custodial interrogation. Id. at 719. At the outset, Youngblood declined to answer any questions without an attorney present. But the officers continued to talk to Youngblood, telling him if he admitted the drugs were his, he might help his girlfriend avoid criminal charges. Id. at 719-20. The Second District concluded “the statements of the law enforcement officers amounted to continued interrogation. Mr. Youngblood did not voluntarily reinitiate contact with law enforcement, but rather was effectively pressured into waiving his constitutional rights.” Id. at 721. In this case, a scant 40 minutes passed between the time Appellant asserted his right to an attorney and when Sergeant Crews initiated the subsequent conversation. The sergeant stated his desire to question Appellant about the incident, lamented that he could not do so because Appellant had requested an attorney, and expressly asked Appellant whether he would be willing to “reconsider” and speak with a detective at the station. When Appellant began to vacillate, the sergeant exerted further pressure by saying “We’d appreciate it” and by telling Appellant, inter alia, the truth would come out after authorities interviewed the child victim. Like Youngblood, the tactic employed here amounted to interrogation and rendered Appellant’s subsequent waiver of his right to counsel under Miranda involuntary. *889 See also Cribbs v. State, 378 So.2d 316, 318-19 (Fla. 1st DCA 1980) (reversing suppression denial because misinformation appellant received from police vitiated Miranda, but stating in dicta that appellant’s waiver of right to counsel also was not voluntary because police resumed questioning only a brief time after appellant invoked the right, and made statements that could be characterized as an attempt to persuade appellant to reconsider his request for counsel). Accordingly, the trial court should have suppressed Appellant’s confession.
Notwithstanding, if a trial court errs in admitting a confession obtained in violation of Miranda, the appellate court may uphold the conviction if the error was harmless. See, e.g., Ross v. State, 45 So.3d 403, 434 (Fla.2010). But the State must “prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.” State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986).
The [harmless error] test is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probably than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict.
Id. at 1139.
In this case, the answer to that question is yes. The only direct evidence the jury heard was the testimony of the then twelve-year-old victim. The State presented no DNA or other physical evidence. Thus successful prosecution hinged on the victim’s credibility. Serving to bolster his testimony was that of his parents, who found Appellant naked in their son’s bedroom, and of the Sheriffs office computer investigator, who found images of child pornography on Appellant’s laptop. But the record demonstrates the State primarily relied on Appellant’s confession to corroborate the victim’s account of what happened. This is evident from the prosecutor’s closing argument during which he compared the victim’s testimony, count by count, to Appellant’s confession and told the jury, inter alia:
Ask yourself if the testimony of [the victim] was consistent with everything you heard the defendant admit to on the tape, down to the letter, and I would submit — or the state would submit the only discrepancy was Ken O’Brien maintained that he never asked the boy to perform oral sex on him upstairs in the game room. The boy said it did happen; Ken O’Brien said it didn’t. That’s the only discrepancy in this case. That’s the only factual dispute between defendant and victim.
[[Image here]]
The testimony of [the victim], testimony as corroborated by [the victim’s father], the evidence that’s on the lap top, Ken O’Brien’s attempt to conceal or hide the lap top, and Ken O’Brien’s words, Ken O’Brien’s confession and admission in this case, prove that the defendant is guilty.
Under these circumstances, we cannot say with reasonable certainty the trial court’s failure to suppress Appellant’s statements was harmless and did not contribute to the jury’s guilty verdicts. Therefore, we must *890 REVERSE Appellant’s convictions and remand for further proceedings.
PADOVANO, ROBERTS, and MARSTILLER, JJ., concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. The language quoted here is from the transcript of the suppression hearing. Although the transcription does not identify the speakers, the two voices can be distinguished.

. Appellant also sought suppression on the basis that he was so intoxicated when arrested, he could not have knowingly, voluntarily and intelligently waived his Miranda rights. But at the suppression hearing, he conceded his intoxication alone would not require suppression because admittedly he appeared coherent on the interrogation recording. And he does not argue this basis on appeal.