PER CURIAM.
The State appeals the trial court’s order granting Michael Wilburn’s motion to suppress. We reverse.
*1117 Wilburn was charged with several counts of possession of illegal drugs. Before trial, he filed a motion to suppress the drugs which he argued were illegally seized because the police failed to obtain a search warrant. In support of the seizure, the State presented the testimony of the detective who seized the drugs. The detective, who was the State’s only witness, testified that his unit received an anonymous tip that narcotics and firearms were being sold from within an apartment. The tipster advised the police of the specific address. The detective and his squad went to the address.
Two other officers knocked on the apartment door and made contact with the renter. The officers obtained written consent from the tenant to search the apartment. Wilburn, a visitor in the apartment, was asked to step outside. While outside, Wilburn came in contact with the detective who escorted Wilburn five feet away from the front door and asked him to have a seat on the sidewalk. At this point, the detective asked Wilburn for identification. Wilburn put his hand in his pocket, attempting to comply, and removed his hand very quickly. Thinking this action was curious, the detective asked Wilburn to stand and face the building and repeated his request for identification. Wilburn then removed his license from his right front pants pocket, at which time a clear plastic “Ziploe” baggie containing three crack cocaine rocks fell to the ground. The detective handcuffed Wilburn and, during a pat down search, found more drugs in Wilburn’s pocket.
Over an authentication objection by Wilburn, the written consent form was admitted into evidence. At the conclusion of the State’s presentation of evidence, Wilburn’s counsel argued that the State failed to prove venue and that Wilburn was improperly seized by the police. The trial court granted the motion on the grounds that the State failed to establish venue by failing to present evidence that the crime was committed in the county where Wilburn was charged. In granting the motion, the court made the following findings:
THE COURT: They don’t need to. What you need to focus on is the detective is absolutely right that he went in the lady — there was no evidence that Mr. Wilburn owned the apartment. That the detectives could go in on consent of the lessee. They went in. What happened inside was totally different than what happened outside ...
What is more telling is not what the detectives did or did not do because they acted pursuant to law.
The detective in this case, Mr. Wilburn, of course, having drugs on him, reached in his pocket to get I.D. and it fell out. That’s what we had. If that’s all I had, the motion would be denied because the detectives and law enforcement did what they were supposed to do pursuant to all law, U.S. Supreme Court cases, as well as Florida Supreme Court and the Fourth District.
On appeal, the State contends that the trial court erred in determining that venue was not established. On this issue, Wilburn correctly concedes that the trial court erred in granting the motion to suppress based on lack of venue. We therefore reverse the order granting the motion to suppress.
Conceding error on the venue question, Wilburn nonetheless argues that the trial court correctly suppressed the evidence. Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644 (Fla.1999) (“[I]f a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support the judgment in the record.”). Addressing his argument, we discuss two issues: 1) Wil *1118 burn contends that the State failed to properly authenticate the signed consent form, 2) He also argues that the owner’s consent to search did not serve as justification for the police to temporarily detain him as a visitor.
The standard of review applicable to a motion to suppress requires this court to defer to the trial court’s factual findings but review legal conclusions de novo. Woods v. State, 25 So.3d 669, 670 (Fla. 4th DCA 2010).
We begin with whether the State failed to authenticate the consent form in order for it to be properly admitted into evidence. Section 90.901, Florida Statutes (2010), provides “[ajuthentication ... of evidence is required as a condition precedent to its admissibility. The requirements of this section are satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.” Direct and circumstantial evidence may be used to make a prima facie showing that evidence is authentic. Yates v. Bass Ranch, Inc., 379 So.2d 710, 711 (Fla. 4th DCA 1980). Evidence may be authenticated by appearance, contents, substance, internal patterns, or other distinctive characteristics taken in conjunction with the circumstances. See Hams v. State, 619. So.2d 340, 342 (Fla. 1st DCA 1993).
The detective testified that the consent form was signed on the date of the incident by pointing to the date of the case number. He further testified that the form was signed by two other officers, who were on the scene with him, and that he is familiar with their signatures. Lastly, the form contained the correct case number. We hold that the detective properly authenticated the consent form, thus allowing for its introduction. In so holding, we also conclude that the State established that the search of the apartment was consensual.
Next, Wilburn argues that the war-rantless search did not justify the temporary detention of visitors. The Second District addressed the temporary detention of a co-tenant during the warrantless search of his residence in State v. Yule, 905 So.2d 251 (Fla. 2d DCA 2005).
If a residence is being validly searched, it is proper for officers to detain and conduct a search of the individuals found at that residence for safety purposes. Id. In Yule, William Yule and Stacy Ellison, his female co-tenant, shared a residence. Id. at 252. Ellison was on probation when her probation officer received a complaint from a relative that she was dealing drugs out of her residence. Id. Two probation officers, accompanied by two detectives, went to the residence to conduct a warrantless search for drugs as evidence of a probation violation. Id. Ellison agreed to a search of the residence. Id. Yule and another woman were found in the living room and were instructed by the detectives to remain in the living room while a search was conducted of Ellison’s bedroom. Id. During the search, one of the detectives asked Yule “if he had any weapons on him” to which Yule responded that “he had a knife in his pocket.” Id. The detective took the knife from Yule and then asked him if he had any more weapons on his person. Id. at 252-53. Yule responded no and “lifted up his shirt and turned around as to display if he had any weapons on him.” Id. at 253. When Yule lifted his shirt, the detective observed an “empty pen cartridge sticking out of the rear of his pocket” that had “a white residue in it.” Id. Based on his training and experience, “the detective concluded that the pen cartridge “was used to ingest methamphetamine.” The detective then conducted a pat down of Yule and re *1119 trieved “four other tubes and cartridges” from his pocket.” Id.
In his motion to suppress, Yule contend: ed the physical evidence and his statements were obtained as the result of an illegal warrantless search and an illegal investigatory detention. Id. The trial court granted the motion. Id. Reversing the trial court’s order, the Second District held that:
Once lawfully inside the residence, the detectives encountered Yule in the living room of the residence, instructed him to stay in the living room for reasons of officer safety, and one of the detectives asked him if he had any weapons. We conclude that the interest in officer safety provided an adequate justification for Yule’s initial detention and the detective’s inquiry concerning weapons ... The probationary search of the residence was justified and the detectives properly accompanied the probation officers during the search to provide additional security. To secure the premises and ensure officer safety, the detectives properly detained and questioned Yule. At each step along the way, the probation officers and the detectives acted based on proper legal authority.
Id. at 255.
Here, the officers made contact with the renter and obtained his written consent to search the apartment. Once inside, the officers came in contact with Wilburn and asked him to step outside. While outside, Wilburn came in contact with the detective and was asked to produce his identification. In response, Wilburn put his hand in his pocket and removed it quickly. Finding Wilburn’s action curious, the detective asked Wilburn to stand up, face the building and repeated his request for identification. Wilburn again put his hand in his pocket and while producing his license, a clear plastic bag fell from his right front pants pocket. At that point, the detective handcuffed him, conducted a pat down, and retrieved more drugs. We think the Second District’s holding in Yule is applicable to this case and conclude that it was permissible for the detective to temporarily detain Wilburn, an occupant of a residence, while a warrantless search of the residence was being conducted.
Finally, Wilburn asserts that because he was a mere visitor to the apartment, the officers had no right to have him face the wall and request his identification. The improper request led to him accidentally dropping the drugs; therefore his arrest and discovery of drugs must be suppressed as fruit of the poisonous tree. We conclude that it was permissible for the detective to ask Wilburn, who was properly detained during a warrantless search of the apartment, for identification. State v. Ramos, 598 So.2d 267, 269 (Fla. 3d DCA 1992) (holding that it is permissible during a valid Terry[1] stop for an officer to ask the person detained for identification.).

Reversed.

STEVENSON and CONNER, JJ„ concur.
WARNER, J., concurs in result only.

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).