May, J.
The defendant appeals his conviction and life sentence for first degree murder as a principal. He argues the trial court erred in denying: (1) his motion to suppress; and (2) his request for an independent act instruction. We find no error and affirm.
The facts giving rise to this case stem from a verbal altercation at a Waffle House between the defendant and the victim. The defendant had contact with two acquaintances. Shortly thereafter, the victim was shot by those acquaintances,
In his first issue, the defendant argues the trial court erred in denying his motion to suppress statements he made after he invoked his right to counsel. The State responds that because the defendant voluntarily reinitiated communication with the detective after invoking his rights, the trial court correctly denied the motion to suppress. We agree with the State.
In reviewing a trial court’s ruling on a motion to suppress, we defer to the trial court’s factual findings and have de novo review of any legal issues. Woods v. State, 25 So.3d 669, 670 (Fla. 4th DCA 2010).
*722 “An accused in custody, ‘having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him,’ unless he validly waives his earlier request for the assistance of counsel.” Smith v. Illinois, 469 U.S. 91, 94-95, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984) (quoting Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)).
Both sides agree that the defendant clearly invoked his right to counsel. This leads us to the secondary issue of whether the defendant “(a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked.” Id. at 95, 105 S.Ct. 490. A court looks to the “totality of the circumstances surrounding the interrogation” when determining whether a suspect made a knowing and uncoerced waiver. See Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986).
Video footage of the encounter shows the detective reading the Miranda rights to the defendant, the defendant’s invocation of his rights, and the defendant’s subsequent initiation of further discussion in a knowing and voluntary waiver of his rights.
After the detective read the defendant his Miranda rights, the defendant requested a lawyer. In response, the detective asked: “So you don’t want to talk about this investigation at all?” The defendant answered “no” and the detective responded: “All right. We will be in in a second to take your property.” The detective closed his laptop, picked up his papers, and started toward the door when the defendant asked the detective what was going on with his girlfriend. The detective responded: “I’m talking to her [about what happened that day]” and “she was there with you.”
The defendant then began a lengthy narrative. The detective reminded the defendant: “You understand that you told me you didn’t want to talk now you’re asking me a question, you want me to answer that?” The defendant answered “yes,” and again volunteered more information, saying he wanted to talk about his “point of view.” The defendant denied being involved in the murder, knowing who committed the murder, or knowing the people in the black car from which the gunshots were fired.
The entire exchange not only reveals the defendant initiated communication with the detective, but that he knowingly and intelligently waived his rights. The detective repeatedly reminded the defendant of his ability to invoke his rights, yet the defendant continued to volunteer information. The totality of circumstances shows the defendant knowingly and intelligently waived his rights.
This case is unlike Black v. State, 59 So.3d 340, 345 (Fla. 4th DCA 2011), upon which the defendant relies. There, after the defendant had invoked his rights, the detective asked if the defendant wanted to talk to one of the detectives about the double murder. Id. at 343. The detectives then reinitiated their interrogation. Id. We held the detective’s follow-up question was “an effort (intended or not) to wear down [the defendant’s] resistance and make him change his mind.” Id. at 346. The detective’s question which followed the invocation of the defendant’s rights crossed the bright line requiring cessation of all questioning.
Here, however, the detective did not ask a question to wear down the defendant’s resistance or urge him to change his mind. When the defendant invoked his rights, the detective clarified the defendant’s intent, and then packed up to leave. The *723 detective did not continue to interrogate the defendant. Rather, the defendant reengaged the detective and volunteered information even though the detective continued to remind him of his ability to invoke his rights.
There is also no error in the trial court’s denial of the request for an instruction on the independent act doctrine. “The ‘independent act’ doctrine arises when one co-felon, who previously participated in a common plan, does not participate in acts committed by his co-felon, ‘which fall outside of, and are foreign to, the common design of the original collaboration.’ ” Ray v. State, 755 So.2d 604, 609 (Fla. 4th DCA 2000) (citation omitted). While a defendant is entitled to have the jury instructed on the law applicable to his theory of defense, he is not entitled to an instruction where there is no evidence to support it. Id. at 608; Beasley v. State, 774 So.2d 649, 662-63 n.10 (Fla. 2000).
Here, there was no evidence to support the defendant’s theory that he and the co-defendants were initially part of a plan to scai’e the victim, or that his co-defendants deviated from that plan by shooting the victim. Defense counsel conceded during opening statement that “the evidence is not going to show you that there was a plan. The evidence is going to show you that there was no plan.” (Emphasis added).
The trial court did not err by denying either the motion to suppress or the requested instruction on the independent act doctrine. We therefore affirm.

Affirmed.

Damoorgian and Conner, JJ., concur.