LEWIS, C.J.
The State appeals the trial court’s order granting Michael Vincent Parker’s motion to suppress. For the reasons that follow, we conclude that the trial court erred by granting the motion to suppress and, therefore, reverse the order.
Parker was charged with burglary with battery, attempted sexual battery on a physically incapacitated or physically helpless victim, sexual battery without physical force, and battery based on acts he allegedly committed on or about July 31, 2011. Parker filed a motion to suppress his recorded interview with the police and any statements he made therein and argued in part that the detective failed to give a good-faith answer to his prefatory question of “[c]an you just tell me if I need to get a lawyer or something” and “steamrolled” him. At the hearing on Parker’s motion, the State conceded that Parker posed a prefatory question during the interview; the parties stipulated that Deputy Buckley made contact with Parker at his apartment and read him his Miranda rights; and Deputy Buckley testified that Parker indicated he understood his rights. Parker voluntarily accompanied the officers to the police station for an interview.
The transcript of the interview showed that Parker was informed that he was not under arrest and he acknowledged that he had been read his rights. Detective Jones proceeded to read Parker his Miranda rights again, and Parker indicated that he understood them and wished to talk. Parker described his version of the events and answered the detective’s questions by providing a series of exculpatory statements. The detective’s subsequent insistence on Parker’s guilt prompted the following conversation:
PARKER: Can you just tell me if I need to get a lawyer or something? I’ll tell you but I just don’t — I don’t want to like—
DETECTIVE JONES: Listen, that’s your right. But what I’m interested in is the truth,—
PARKER: I know.
Parker then made numerous incriminating statements. In response to Parker’s questions about potential sentences, the detec *702 tive said that was “beyond the scope of what [he was] allowed to give advice about, okay, so [Parker was] going to end up talking to a lawyer.” Parker repeatedly expressed a desire to write a letter of apology to the victims, but was uncertain as to whether it was a good idea. Detective Jones told Parker several times that he did not have to write a letter and it was his choice. The following conversation subsequently occurred:
PARKER: I want to say I’m sorry. I don’t know what to do right now. Is there — is there a lawyer in the building or am I going to have to f* * * * * * sit in there and wait?
DETECTIVE JONES: No, you would have to call one. Listen, man, if you don’t want to do it—
PARKER: Or a call to my parents. I mean, I just want — I just need some advice, man. I just — I want to say I’m sorry really bad, I just don’t want to— DETECTIVE JONES: What are you sorry for?
Parker ultimately called his father and was visited by his grandfather. At the end of the interview, Parker was arrested.
Following the hearing, the trial court entered an order granting Parker’s motion to suppress. The trial court found in pertinent part that the interview became an interrogation when Detective Jones confronted Parker with the allegations and that “[t]he audio of the interview reflects that there was no space between the words ‘right’ and ‘but’ in Detective Jones’ response to [Parker’s] question. It would more accurately be described as ‘Listen, that’s your right but what I’m interested in is the truth.’ ” The trial court further concluded that Parker made at least two attempts to request an attorney; that “[w]henever he asked if he could make a call to get advice, Detective Jones prevented him from doing so”; that Detective Jones failed to answer in good-faith Parker’s question of whether a lawyer was available; and that throughout the interrogation, Detective Jones engaged in gamesmanship and either overrode or steamrolled Parker as he attempted to invoke his right to counsel. Accordingly, the trial court granted Parker’s motion “as to the statements that he made as a result of custodial interrogation after he initially invoked his right to counsel (‘Can you just tell me if I need to get a lawyer or something?’).” This appeal followed.
A trial court’s ruling on a motion to suppress carries a presumption of correctness. Spivey v. State, 45 So.3d 51, 54 (Fla. 1st DCA 2010). This Court defers to the trial court’s findings of fact if they are supported by competent, substantial evidence, but reviews its findings of law de novo. Id. During custodial questioning, a suspect has the right to consult with an attorney and to have an attorney present. Id. (citing Miranda v. Arizona, 384 U.S. 436, 469-73, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). “If a suspect clearly and unequivocally requests counsel at any time during a custodial interview, the interrogation must immediately stop until a lawyer is present or the suspect reinitiates conversation.” Id. (explaining that a “suspect must ‘articulate his desire to cut off questioning with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent’ ”). If, on the other hand, a suspect who has knowingly and voluntarily waived his rights makes an equivocal or ambiguous request for counsel, police officers are not required to stop the interrogation or ask clarifying questions. Id. (holding that the appellant’s statement, “I mean if I am being held and I’m being charged with something I need to be on the phone calling my lawyer,” was not an unequivocal request *703 for counsel because it “did not clearly indicate that [he] wanted counsel present at that time or that he would not answer any further questions without counsel”); see also Walker v. State, 957 So.2d 560, 571, 574 (Fla.2007) (Ending that the appellant did not make an unequivocal request for counsel where he said, “I think I might want to talk to an attorney” and later asked the agent if he needed an attorney); Jones v. State, 748 So.2d 1012, 1020 (Fla. 1999) (finding that the appellant’s statement that he wanted to speak “to his mother, his attorney, and Detective Parker” was not an unequivocal request for counsel).
In Almeida v. State, 737 So.2d 520, 523-24 (Fla.1999), the Florida Supreme Court distinguished an equivocal statement that requires no clarification from a question that is “prefatory to — and possibly determinative of — the invoking of a right.” The Court held:
if, at any point during custodial interrogation, a suspect asks a clear question concerning his or her rights, the officer must stop the interview and make a good-faith effort to give a simple and straightforward answer. To do otherwise — i.e., to give an evasive answer, or to skip over the question, or to override or “steamroll” the suspect — is to actively promote the very coercion that Traylor [v. State, 596 So.2d 957 (Fla.1992) ] was intended to dispel. A suspect who has been ignored or overridden concerning a right will be reluctant to exercise that right freely. Once the officer properly answers the question, the officer may then resume the interview (provided of course that the defendant in the meantime has not invoked his or her rights). Any statement obtained in violation of this proscription violates the Florida Constitution and cannot be used by the State.
Id. at 525-26 (“whenever constitutional rights are in issue, the ultimate bright line in the interrogation room is honesty and common sense”). A prefatory utterance must be subject to the following three-step analysis: (1) whether the defendant was in fact referring to his right to counsel; (2) whether the utterance was a clear, bona fide question calling for an answer, not a rumination or a rhetorical question; and (3) whether the officer made a good-faith effort to give a simple and straightforward answer. Id. at 523-25.' Accordingly, the Court reversed the appellant’s conviction upon concluding that the detective steamrolled him by ignoring his question of “[w]ell, what good is an attorney going to do?” and continuing the interrogation. Id.
In State v. Glatzmayer, 789 So.2d 297, 300, 304-05 (Fla.2001), the Florida Supreme Court held that where the appellee “asked the officers if ‘they thought he should get a lawyer?,’ ” the officers’ response that it was the appellee’s decision was a good-faith effort to give a simple and straightforward answer because “[t]heir response was simple, reasonable, and true.” “Unlike the situation in Almeida, the officers did not engage in ‘gamesmanship’; they did not try ‘to give an evasive answer, or to skip over the question, or to override or steamroll’ the suspect.” Id. at 305 (concluding that “[a]ll that is required of interrogating officers under Almeida and [State u] Owen[ 696 So.2d 715 (Fla. 1997) ] ‘ is that they be honest and fair when addressing a suspect’s constitutional rights”); see also Chaney v. State, 903 So.2d 951, 951-52 (Fla. 3d DCA 2005) (rejecting the appellant’s arguments that the detective failed to make a good-faith effort to give a simple and straightforward answer and was evasive and intended to steamroll him where the appellant asked the detective if he thought the appellant needed a lawyer and the detective responded, “Do you think you need a law *704 yer?,” because the detective’s “question in effect correctly informed [the appellant] that it was up to [him] to decide whether or not he needed a lawyer”).
In the present case, the issue turns on the third step of the Almeida analysis: whether Detective Jones gave a good-faith answer to Parker’s prefatory question of “[c]an you just tell me if I need to get a lawyer or something?,” or tried to override or steamroll him. We conclude that Detective Jones’s response of “[l]isten, that’s your right. But what I’m interested in is the truth, — ” complied with Almeida because the response was simple, straightforward, and true and in effect communicated to Parker that he had the right to counsel and whether to ask for one was his choice. We further find with regard to Parker’s prefatory question of “[i]s there — is there a lawyer in the building,” that Detective Jones’s response of “[n]o, you would have to call one” satisfied Almeida because it, too, was simple, straightforward, and honest.
Contrary to the dissent’s characterization of the majority opinion, we are not controverting the trial court’s findings of fact; rather, we disagree with the trial court’s application of the law to those facts. Aside from the above-discussed prefatory utterances, Parker made no other reference to counsel. The dissent contends that the trial judge was entitled to conclude that when Parker asked whether there was a lawyer in the building, he was requesting legal assistance. However, the trial court did not find, and Parker does not argue, that he made an unequivocal request for counsel. Instead, the parties and the trial court properly recognized that the Almeida analysis applies. We agree that Parker was in fact referring to his right to counsel when he posed that prefatory question and that his utterance called for an answer. However, we conclude that the detective made a good-faith effort to give a simple and honest answer.
For these reasons, the trial court erred by granting Parker’s motion to suppress his statements. Accordingly, we REVERSE the trial court’s order.
MARSTILLER, J., concurs; BENTON, J., dissents with opinion.