IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

STATE OF FLORIDA,

     Appellant,

v.

ROBERT GENE HINELINE,

     Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D14-2884

Opinion filed March 5, 2015.

An appeal from the Circuit Court for Okaloosa County.
John T. Brown, Judge.

Pamela Jo Bondi, Attorney General, and Samuel Steinberg, Assistant Attorney General, Tallahassee, for Appellant.

Timothy W. Shaw, and Kyle S. Bauman of Anchors Smith Grimsley, Fort Walton Beach, for Appellee.

PER CURIAM.

The State appeals the trial court's order granting Robert Gene Hineline's motion to suppress. For the reasons that follow, we find the trial court erred and reverse the order.

# I.

Detective Richard Tiburzio, the officer investigating an allegation that Hineline unlawfully touched a twelve-year old, called Hineline to set up a date and time he could meet with him and discuss the allegations. Tiburzio had earlier gone to Hineline's sister's home, told the sister he wanted to talk to him, and left her his business card; he did not tell the sister why he wanted to speak to Hineline. After he called Tiburzio, the detective told Hineline he wanted to speak with him about the incident giving rise to the charge, and that the reason he wanted to do it at the police station was "out of respect, which I do for everybody, is that I might get you to come up to the police department so I didn't have to come to the house and everybody knows what's going on." Ultimately, Hineline voluntarily went to the police station to discuss the matter. He was not under arrest at this point.

While at the police station, Detective Tiburzio recorded his conversation with Hineline (a DVD and transcript of which was used in the trial court proceedings). During the recording, the following exchange occurred:

> [TIBURZIO]: Ok. Well, there's been a referral made to me to investigate, but in order for me to talk to you, I have to read you a rights waiver.
> [HINELINE]: Rights? Why? Am I being arrested or...
> [TIBURZIO]: No, you're not being arrested.
> [HINELINE]: Okay.
> [TIBURZIO]: You're going to be released.
> [HINELINE]: All right.
> [TIBURZIO]: But the bottom line is that in order for me to talk to you, I have to read you your rights because you have rights.

2

[HINELINE]: Okay.

[TIBURZIO]: And I will be more than glad to discuss what's going on at that point in time, but I have to read you a rights waiver. And I figured rather than go to your house...

[HINELINE]: Yeah, I appreciate this...

[TIBURZIO]: You know what I mean?

[HINELINE]: ... because, yeah.

[TIBURZIO]: I'm one of these guys, I've been here 33 years...

[HINELINE]: Right, right.

[TIBURZIO]: ... so I know how this thing works, and I just want to make sure that, you know, mano-a-mano, man-to-man, you and I are just talking and stuff like that, but...

[HINELINE]: Okay.

[TIBURZIO]: ... in order to talk to you, I need to read you your rights. Would you be willing to talk to me?

[HINELINE]: Yeah.

[TIBURZIO]: Okay.

[HINELINE]: Yeah. I don't have anything to hide.

[TIBURZIO]: I didn't figure you did. Okay. Can you read English?

[HINELINE]: Yes.

[TIBURZIO]: Okay. This is a rights waiver. It says, before we ask questions, you must understand your rights. You have the right to remain silent. And anything you say can be used against you in court. You have the right to talk to a lawyer before we ask any questions, and to have a lawyer with you during questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning, if you wish. And if you decide to answer any questions now without a lawyer present, you still have the right to stop answering at any time until you talk to a lawyer. Does that make sense?

[HINELINE]: *Okay, do you think I'm going to need a lawyer? I mean...*

[TIBURZIO]: *Well, we'll discuss that here in just a second.*

[HINELINE]: *Okay.*

[TIBURZIO]: *That's up to you. Do you understand those rights*?

[HINELINE]: *Yeah.*

[TIBURZIO]: *Okay. Do you wish to talk to me at this time*?

[HINELINE]: *Yeah.*

(emphasis added).

3

Immediately following this exchange, Hineline signed the <u>Miranda</u>[1] rights waiver form, and subsequently made both written and oral inculpatory statements admitting he touched the victim.

In his deposition testimony, Detective Tiburzio explained that during his interview, "I was wanting to explain to [Hineline] what the allegation was before he even decided that [getting an attorney]. And I'm not in the business, as you know, recommending attorneys for people, that's up to him. He's an adult and he understands it's the law. He could have left at any point in time that he wanted to. He wasn't under arrest."

Subsequently, Hineline was charged with lewd or lascivious molestation, based on the allegation that at age forty-eight, he unlawfully and intentionally touched a twelve-year old child's breasts, genital, genital area, or buttocks, or the clothing covering them.

Hineline moved to suppress his statements made during the interrogation, arguing that Detective Tiburzio's response to his prefatory question of, "[w]ell, we're going to discuss that here in a second. That's up to you," was improper and allowed the detective to "steamroll" him. The parties stipulated that the narrow issue to be decided at the suppression hearing was whether the officer made a

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

good-faith effort to give a simple and straightforward answer, the third prong in the test announced in <u>Almeida v. State</u>, 737 So. 2d 520 (Fla. 1999).

At the conclusion of the hearing, the trial court granted the motion, finding that "we wouldn't be sitting here" had the detective not said, "[w]e'll discuss that here in just a second." The court reasoned that the response was not honest and fair, that the detective glossed over the prefatory question, and that while he did not "steamroll" Hineline, the officer engaged in "gamesmanship." In a written decision, the court found that Detective Tiburzio "never returned to a discussion of whether or not the defendant needed a lawyer" after Hineline's question, and reiterated that, "[a]lthough the Detective did not 'steamroll' the defendant, the Detective did "gloss over" the defendant's question and engaged in 'gamesmanship.'"

On appeal, the State argues that it was error to grant the motion to suppress because Detective Tiburzio appropriately responded to Hineline's prefatory question by telling him, "That's up to you. Do you understand?" but Hineline nonetheless agreed to talk to the detective, and went on to waive his rights.

## II.

We have jurisdiction. Fla. R. App. P. 9.140(c)(1)(B). Ordinarily, this Court reviews a trial court's ruling on a motion to suppress under a mixed standard of review: A reviewing court is bound by the trial court's factual findings if they are

5

supported by competent, substantial evidence, and the trial court's determination of legal issues is reviewed de novo. Pagan v. State, 830 So. 2d 792, 806 (Fla. 2002).

But "this deference to the trial court's findings of fact does not fully apply when the findings are based on evidence other than live testimony." Parker v. State, 873 So. 2d 270, 279 (Fla. 2004). That is, "the clearly erroneous standard does not apply with full force in those instances in which the determination turns in whole or in part, not upon live testimony, but on the meaning of transcripts, depositions or other documents reviewed by the trial court, which are presented in essentially the same form to the appellate court." Thompson v. State, 548 So. 2d 198, 204 n.5 (Fla. 1989); see Almeida v. State, 737 So. 2d 520, 524 n.9 (Fla. 1999) (noting that "[t]he trial court had no special vantage point in reviewing" the recording of the interrogation); Black v. State, 59 So. 3d 340, 344 (Fla. 4th DCA 2011) (a "much less deferential standard" applies if the trial court's factual findings are based on viewing a DVD).

### III.

The resolution of this case—as stipulated to by the parties below—turns on the answer to the third question outlined in Almeida; namely, whether the officer made a good-faith effort to give a simple and straightforward answer. Though this Court defers to the trial court's factual finding to the extent it is supported by competent substantial evidence, because the trial court relied primarily on a review

6

of the DVD of Appellant's interrogation—which is presented in the same form to this Court—a "less deferential standard" applies to its factual findings.

In Almeida, our supreme court outlined a three-step analysis to "an *un-equivocal* question that was prefatory to—and possibly determinative of—the invoking of a right" as follows: (1) whether the defendant was in fact referring to his right to counsel; (2) whether the utterance was a clear, bona fide question calling for an answer, not a rumination or a rhetorical question; and (3) whether the officer made a good-faith effort to give a simple and straightforward answer. 737 So. 2d at 523-25. Almeida had been read his rights, signed a waiver, made a brief inculpatory statement about an unrelated killing, and then made further inculpatory statements following this conversation with the interrogating officer:

> Q. . . . Did you understand all of these rights that I read to you?
> A. Yes.
> Q. *Do you wish to speak to me now without an attorney present?*
> A. *Well, what good is an attorney going to do?*
> Q. Okay, well you already spoke to me and you want to speak to me again on tape?
> Q. (By Detective Allard) We are, we are just going to talk to you as we talked to you before, that is all.
> A. Oh, sure.

Id. at 522 (emphasis in original). Our supreme court found that Almeida's response was prefatory to invoking his rights, and applied the three-prong analysis to conclude that the officer's response did not satisfy the test. Specifically, the court reasoned that by

ignoring the question and continuing the interrogation—i.e., by "steamrolling" the defendant—the officers did two things. First, they exacerbated the inherently coercive atmosphere of the interrogation session. (How could Almeida feel free to exercise his rights when police had just overridden his question concerning those rights?) And second, they placed in doubt the validity of the prior waiver. (How could Almeida have knowingly and intelligently waived his rights earlier if he did not know "what good ... an attorney [is] going to do?")

Id. at 523, 525 (reversing the conviction and vacating the sentence).

This Court recently applied the third prong of Almeida in State v. Parker, 144 So. 3d 700 (Fla. 1st DCA 2014), to reverse a trial court's grant of a motion to suppress recorded statements given during a custodial interrogation. Id. The appellant had asked the officer: "[c]an you just tell me if I need to get a lawyer or something?" and "[i]s there—is there a lawyer in the building?" Id. at 701. In response to the first question, the detective said, "[l]isten, that's your right. But what I'm interested in is the truth," and in response to the second question, he said, "[n]o, you would have to call one." Id. at 701, 704. This Court held that the interrogating officer made a good-faith effort to give simple and straightforward answers to the appellant's prefatory questions. Id. at 701. We reasoned that the officer's responses were simple, straightforward, and true, and in effect, communicated to the appellant that he had the right to counsel and whether to ask for one was his choice. Id. at 704.

The same outcome is warranted here. When viewed in isolation and out of context, the officer's statement, "[w]ell, we'll discuss that here in just a second,"

8

appears to be inconsistent with the requirements of <u>Almeida</u>, warranting suppression. Instead, viewing the video interaction between Detective Tiburzio and Hineline in context, as is required, <u>see</u> <u>Lewis v. State</u>, 747 So. 2d 995, 997 (Fla. 5th DCA 1999) (examining the entirety of the interactions in determining whether the response was adequate), what occurred was a fluid conversation between Hineline and the officer (in which Hineline was cooperative), and there was no pause between the officer's response of "[w]ell, we'll discuss that here in just a second," and "[t]hat's up to you. Do you understand those rights?" In fact, immediately following this latter question, Hineline indicated he understood his rights, and, when the officer again asked whether—in lieu of understanding his rights, and hearing "[t]hat's up to you"—if he wished to speak to him, Hineline responded affirmatively.

Only after answering Hineline's question, and after Hineline indicated his continued willingness to speak to the detective after being fully advised of his rights, did Detective Tiburzio resume the interrogation. "Once the officer properly answers the [defendant's prefatory] question, the officer may then resume the interview (provided of course that the defendant in the meantime has not invoked his or her rights)." <u>Almeida</u>, 737 So. 2d at 525. That is exactly what happened here. Under the circumstances, the officer had nothing left to do to be compliant with <u>Almeida</u>'s mandate. That the officer never returned to Hineline's prefatory

9

question then was wholly appropriate, as <u>Miranda</u> does not require the interrogator to give legal advice; rather, <u>Miranda</u> requires only that the officer tell the defendant of his constitutional right because the determination for the need for counsel is the **defendant**'s prerogative. <u>State v. Craig</u>, 237 So. 2d 737, 740 (Fla. 1970); <u>see</u> <u>Johnson v. State</u>, 660 So. 2d 637, 642 (Fla. 1995) (explaining that the police are not required to tell suspects what may or may not be in their best interests). Accordingly, the motion to suppress should have been denied.

REVERSED.

RAY, MAKAR, and BILBREY, JJ., CONCUR.